## JANUARY TERM, 1885. 145

Ferguson vs. The Wisconsin Central R. Co. and another.

FERGUSON, Respondent, vs. THE WISCONSIN CENTRAL RAIL-
ROAD COMPANY and another, imp., Appellants.

*April 4 — April 28, 1884.*

RAILROADS: NEGLIGENCE: PRACTICE. *(1) Injury to person crossing
track: Contributory negligence: Court and jury. (2) Care in
making running switches. (3) Instructions to jury. (4) Evi-
dence: Immaterial error. (5) Presumption as to operation of
railroad by company whose name it bears. (6) Damages.*

1. Plaintiff attempted to cross a railroad track on the main street of a
   village while a running switch was being made. He stepped upon
   the track just after the engine had passed, and was struck by a de-
   tached car which was following. Upon evidence tending to show
   that he did not know and had no reason to suspect that a running
   switch was being made; that the noise of the car was drowned by
   that of the passing engine; and that when he stepped upon the
   track he was so enveloped in smoke and steam from the engine
   that he could not see the car approaching, it is *held*, that the ques-
   tion of plaintiff's contributory negligence was properly left to the
   jury; and a special finding that if he had waited until the smoke
   and steam had cleared away he could have seen the car, does not
   conclusively establish his negligence.
2. In making a running switch at a point where the track crosses a
   public business street in a populous village, a railroad company is
   bound to exercise a high degree of care; and the question whether
   all reasonable precautions were employed to prevent accidents is
   ordinarily one for the jury.
3. Immediately after the rule as to the degree of negligence which
   would render a railroad company liable for an injury had been cor-
   rectly stated to the jury, they were further instructed that " any
   negligence" of its servants is negligence of the company, and if
   "such negligence" caused the injury, etc., the company is liable.
   *Held*, that the jury must have understood the latter instruction to
   refer to negligence of the degree before spoken of, and there was
   therefore no error.
4. An error in the rejection of evidence becomes immaterial when the
   facts sought to be proved thereby are *afterwards established by*
   other uncontradicted evidence.
5. When a railroad company owns a railroad in operation, bearing the
   name of the company, and which presumably the company con-
   structed, the presumption is that such company operates it, and

in order to relieve itself from liability for injuries to persons upon such road, caused by the negligence of the employees operating the same, the burden of proof is upon it to show that it does not operate the same.

6. A verdict for $8,000 damages for personal injuries, *held* not excessive.

APPEAL from the Circuit Court for *Waupaca* County.

This action was brought to recover damages for personal injuries sustained by the plaintiff, who was struck by a moving car on the Wisconsin Central Railroad, at the village of Spencer, on September 26, 1881. The defendant Stewart was not served with process, and made no appearance to the action.

The complaint alleges that at the time the plaintiff was injured the railroad was being operated by the defendant company, and by the defendants *Abbot* and Stewart, as trustees thereof, and that the injury was caused by the negligence of the defendants' employees operating the car and railroad at that point. It also alleges that the plaintiff was injured without fault or negligence on his part, and states the circumstances under which the injury occurred.

The defendant *Abbot* answered separately, alleging that he and his co-trustee (Stewart) had, at the time the plaintiff was injured, the sole and exclusive possession and control of such railroad, and denying that the defendant company was concerned in the operation thereof. The defendant company also answered, denying that it had any control over or any connection with the operation or management of such railroad when the plaintiff was injured.

The testimony introduced on the trial tends to show the following state of facts: The village of Spencer contains about 800 inhabitants, and the railroad passes through it in a northerly and southerly direction, crossing Clark street, which is the principal business street of the village. The depot is located about forty rods south of Clark street. At the depot there is a side track near the main track, and

connecting with it at the south end by a switch located eighteen and one half feet south of the south side of Clark street.  About 300 yards north of this switch there is a spur track, known as " Lamb's side track," connecting with the main track.  On the day the plaintiff was injured, a train of freight cars arrived from the south and stopped in the vicinity of the depot.  A car was standing upon Lamb's side track, which it was desired to place in the train, and so the engine was detached from the train and moved up the track and was attached to such car.  The engine was then backed south, down the track, with the car in its rear attached to the pilot.  When they reached a point eight or ten rods north of Clark street, and while still in motion, this car was detached from the engine, which ran upon the side track, leaving the car to run down the main track to the train.  When this process was going on, the plaintiff came out of a store a few rods west of the track, and walked east on Clark street towards the track.  He approached the track just as the engine was passing, and after it had passed he attempted to cross the track and was struck by the car, receiving the injuries complained of. When he stepped upon the track he was enveloped with smoke and steam from the engine, which obscured his vision. He did not look north on the track until it was too late to avoid the injury.  The railroad at this point descends somewhat to the south, and the car was running with considerable velocity.  The point of the injury was about fifty feet north of the switch connecting the side track first above mentioned with the main track.  After pulling the pin which detached the car from the engine, the brakeman went to the top of the car and partly set the brake for the purpose of checking its motion, in order that the switch might be adjusted before the car reached it.  He then saw the plaintiff and called to him, but too late to avoid the acci-

Ferguson vs. The Wisconsin Central R. Co. and another.

dent.   It does not appear that any other  precautions were used to avoid injury to persons passing along the street while the switching was being done.   By reason of his injuries one half of one of plaintiff's feet was necessarily amputated, he was disabled from attending to his business for over thirteen months, and was subjected to an expenditure of considerably over $1,000 for surgical and other attendance, and for medicine.

The following special verdict was returned by the jury:

"1. Were the defendants, in doing this switching, guilty of any want of ordinary care and diligence, and was such want of ordinary care and diligence the cause of the injury? *Answer.* Yes.

"2. Were the defendants guilty of want of ordinary care and diligence in making a flying or running switch across the public street at the place where this flying or running switch was made?   *A.* Yes.

"3. Were the defendants guilty of any want of ordinary care and diligence in making this flying or running switch, and did such want of ordinary care and diligence cause the injury?   *A.* Yes.

"4. Had the plaintiff waited until the smoke and steam made by the passing engine cleared away, before stepping on the track, or attempting to go on the track, could he have seen the car which followed the locomotive, had he looked?   *A.* Yes.

"5. Was the plaintiff struck by the car within the limits of Clark street, or south of Clark street?   *A.* Within the limits of Clark street.

"6. When the plaintiff was struck by the car, was he walking south on the railroad, or was he attempting to cross the track?   *A.* The plaintiff was attempting to cross the track at the usual crossing on Clark street.

"7. Was the plaintiff guilty of any want of ordinary

care in stepping on the track, or attempting to go on the track, at the time he did, as testified by him, that contributed to the injury?   *A.* He was not.

" 8. What are the damages the plaintiff sustained by reason of such injury?   *A.* $8,000."

The rulings of the court on the trial, upon which errors are assigned, are stated in the opinion.   Separate motions for judgment on the special verdict, and for a new trial, were made by the defendants *Abbot* and the railroad company, both of which were denied, and judgment for the plaintiff was rendered for the damages assessed by the jury. The defendants the railroad company and *Abbot*, appealed jointly from the judgment.

*Charles W. Felker*, of counsel, for the appellants, to the point that the plaintiff was guilty of contributory negligence in not making vigilant use of his senses of sight and hearing when about to cross the track, cited *Delaney v. M. & St. P. R. Co.* 33 Wis. 67; *Butterfield v. West. R. Co.* 10 Allen, 532; *Prideaux v. Mineral Point*, 43 Wis. 513; *Hoth v. Peters*, 55 id. 410; *Kearney v. C., M. & St. P. R. Co.* 47 id. 144; *Haas v. C. & N. W. R. Co.* 41 id. 44; *Artz v. C., R. I. & P. R. Co.* 34 Iowa, 154, 160; *Mahlen v. L. S. & M. S. R. Co.* 49 Mich. 585; *Wilcox v. R., W. & O. R. Co.* 39 N. Y. 358; *Harty v. Central R. Co.* 42 id. 468; *Railroad Co. v. Houston*, 95 U. S., 697; *C., B. & Q. R. Co. v. Damerell*, 81 Ill. 450; *Rogstad v. St. P., M. & M. R. Co.* 14 Am. & Eng. R. Cas. 648; *Bal. & P. R. Co. v. Maryland*, 4 id. 574.

For the appellant company there was a separate brief by *Howard Morris*.   He contended that, under the pleadings, it was incumbent upon the plaintiff to prove that the company was operating the road and inflicted upon him the injuries complained of.   The company could not be held liable for the torts committed by servants of parties whose possession and operation of the railroad were adverse and hos-

tile to the company, and over which servants the company had no control. *Sprague v. Smith*, 29 Vt. 421; *Rogers v. Wheeler*, 43 N. Y. 598; *Lamphear v. Buckingham*, 33 Conn. 237; *Daniels v. Hart*, 118 Mass. 543; *Barter v. Wheeler*, 49 N. H. 9; *Davis v. Duncan*, 17 Am. & Eng. R. Cas. 295; *Stratton v. European & N. A. R. Co.* id. 277; 76 Me. 269; *State v. E. & N. A. R. Co.* 67 Me. 479; *Ellis v. B. H. & E. R. Co.* 107 Mass. 1, 36.

*Gabe Bouck*, for the respondent, argued, among other things, that it is not the law that a person approaching a railway crossing must look for a train, and if he does not cannot under any circumstances recover. *Butler v. M. & St. P. R. Co.* 28 Wis. 487; *Eilert v. G. B. & M. R. Co.* 48 id. 606; *Texas & P. R. Co. v. Chapman*, 57 Tex. 75; *Plummer v. E. R. Co.* 73 Me. 591; *Keese v. N. Y., N. H. & H. R. Co.* 67 Barb. 205; *Kellogg v. N. Y. C. & H. R. R. Co.* 79 N. Y. 73; *Amstein v. Gardner*, 134 Mass. 4; *Shaber v. St. P., M. & M. R. Co.* 28 Minn. 104. This case is not analogous to the ordinary cases of injuries at crossings. See *Bonnell v. D., L. & W. R. Co.* 39 N. J. Law, 189; *N. J. T. Co. v. Nichols*, 32 id. 91; *N. J. E. Co. v. Nichols*, id. 166; *Brown v. N. Y. C. & H. R. R. Co.* 32 N. Y. 603; *French v. T. B. R. Co.* 116 Mass. 537; *Randall v. Conn. R. R. Co.* 132 id. 269. The plaintiff had the right to assume that the railroad company would use ordinary care, and that the passage of an engine or train would not, with gross negligence, be followed by another. *Hutchinson v. St. P., M. & M. R. Co.* 32 Minn. 398; *Loucks v. C., M. & St. P. R. Co.*, 31 Minn. 526; *Langhoff v. M. & P. du C. R. Co.* 19 Wis. 516; *Reeves v. D., L. & W. R. Co.* 30 Pa. St. 454; *Brown v. H. & St. J. R. Co.* 50 Mo. 461; *Kennayde v. Pacific R. Co.* 45 id. 255; 1 Rorer on Railroads, 539 n; Shearm. & Redf. on Neg. § 655. Even if the ordinary relation of mortgagor and mortgagee in possession existed between the company and the trustees, both are probably liable. *Railroad Co. v.*

*Brown,* 17 Wall. 450; *G. T. M. & T. Co. v. Ullman,* 89 Ill. 244; *Bower v. B. & S. W. R. Co.* 42 Iowa, 547.

LYON, J. 1. The question of the alleged contributory negligence of the plaintiff will first be considered. The jury found, in answer to the fourth question submitted to them, that, had the plaintiff waited until the smoke and steam made by the passing engine cleared away before stepping on the track, he could have seen the car which followed the engine, had he looked. This finding is abundantly supported by the evidence. Counsel for the defendants, in his argument, maintained with great earnestness that this finding establishes the contributory negligence of the plaintiff, under the well-established rule that it is the duty of a person about to cross a railroad track before doing so to look and listen for approaching trains. The motion of the defendants for judgment was based upon this finding.

No court has applied and enforced the above rule more uniformly and consistently than has this court in numerous cases adjudicated by it. Had the plaintiff gone upon the track in front of the engine and been injured, it would probably have been a case for the application of the rule; but no such case is presented in this record. The plaintiff waited for the engine to pass before he went upon the track, and, having done so, the question we are to determine is, Should he have ascertained before going upon the track that a running switch was being made, and a detached car was moving rapidly down the track upon him? We find nothing in the testimony which shows that the plaintiff knew, or ought to have known, the existence of those conditions when he approached the track for the purpose of crossing it. The jury may well have found from the testimony that the noise of the car on the track was drowned by that made by the passing engine; that when he stepped upon the track he was so enveloped in smoke and steam from the

engine that he could not see the approaching car; and that he did not know or have any reason to suspect that a running switch was being made. Under these circumstances it would be manifestly unjust to apply to the plaintiff the rule above stated in all its rigor. The circumstances of the case bring it within the rule of *Butler v. M. & St. P. R. Co.* 28 Wis. 487. In that case the death of the plaintiff's intestate was caused under similar circumstances. A running switch was being made; the locomotive and a portion of the train had passed the point of injury, and the deceased was run upon and killed by the detached portion of the train, which, presumably, he did not see or look for. The circumstances of that case which, it was held, were sufficient to send the question of the contributory negligence of the deceased to the jury, were different from the circumstances of this case. There, the deceased was struggling with a frightened horse; here, the vision of the plaintiff was obscured by the smoke and steam which enveloped him. True, the deceased was acting under a somewhat pressing emergency, while this plaintiff was not; and so it must be conceded that that case is a stronger one for the plaintiff than is this. Yet we think the facts that at the moment of stepping upon the track the plaintiff was unable to see the car; that the engine had already passed him; and that he had no reason to apprehend the immediate approach of another car,— are sufficient to bring the case within the rule of the *Butler Case.* Under those facts it would be a usurpation of the functions of the jury to hold as matter of law that the negligence of the plaintiff contributed directly to the injury complained of. It must therefore be held that the question of the plaintiff's negligence was properly submitted to the jury, and that the fourth finding of fact does not establish that he was guilty of such negligence.

The court charged the jury that " the mere fact that the plaintiff might have seen the car approaching by looking,

Ferguson vs. The Wisconsin Central R. Co. and another.

does not conclusively establish that the plaintiff was guilty of negligence;" and, also, " it is for the jury to determine whether, under all the circumstances of the case, it was negligence on the part of the plaintiff not to apprehend the approach of the detached car, nor look for the same." For the reasons above stated, we think there is no error in these instructions.

2. We are clearly of the opinion that the testimony was sufficient to send the question of the alleged negligence of the defendants to the jury. The making of a running switch at a point where the railroad track crosses public business streets in populous villages is a most dangerous proceeding, and reasonable care on the part of a railroad company to avoid accidents is a high degree of care, sometimes called *the utmost care.* The dangers to person and life involved in making a running switch at such a place, and the precautions which those operating the railroad are bound to use to prevent an accident, are very forcibly stated by Dixon, C. J., in the *Butler Case.* As to what precautions are required, he says: " If trains are to be divided in this way, and run by sections across the streets of populous towns and villages, the least that can be required of the company is that there should be some suitable person at the forward end of the foremost car to notify and warn people passing along the street, and likewise a man at the brakes, that he may set them, in order to avoid collision; and it might not be unreasonable, in such cases, that a flagman should be required at the crossing as a further security against danger. Common prudence, and the most ordinary care, would dictate that at least the former course should be pursued, and all experience demonstrates the necessity of it."

Whether proper precautions were employed in the present case, or otherwise, is an inference to be drawn from the consideration of many facts and circumstances, and it is

peculiarly the province of the jury to determine from the surrounding circumstances whether reasonable precautions were employed to avoid the accident. The descending grade of the road, the speed at which the car was moving, its distance from Clark street when it was detached from the engine, and especially its distance from the point of accident when the brakeman resumed his place on the top of the car, and other surrounding circumstances, are all elements to be considered in determining this question of negligence. It would be a mere affectation to cite cases in this court, or elsewhere, which determine that in such a case the question of the presence or absence of negligence is for the jury.

It necessarily follows from the above observations that the jury are to determine what precautions were required of the defendants to avoid accident. Hence it was not error for the court to refuse to instruct the jury, as proposed on behalf of the defendants, that "failure to have guards or a flagman at the crossing on Clark street is not evidence of negligence, and cannot be considered by the jury."

In this connection an instruction, upon which error is assigned, will be noticed. The court charged the jury that "any negligence of their servants and agents, or any of them, if any such there was, was the negligence of the defendant; and if such negligence of the defendant's servants, or any of them, caused the injury to the plaintiff, and no negligence on the part of the plaintiff contributed to such injury, the defendants are liable to the plaintiff therefor." The criticism upon this instruction is that it does not specify the degree of negligence mentioned; that it holds the defendants liable for slight negligence as well as for want of reasonable care. Standing alone, the instruction is justly open to that criticism; but, upon looking into the general charge of the court, we find the rule as to the degree of negligence which would render the defendants liable cor-

rectly stated, and the instruction excepted to follows immediately thereafter. Hence, when the term "negligence" was employed in such instruction, the jury must necessarily have understood the court to mean the degree of negligence before referred to.

3. On the cross-examination of the witness Carroll, the brakeman on the car when the plaintiff was injured, who was called by the plaintiff, he was asked the following questions: "At which end of the car was the brake? Did you see the plaintiff here, *Ferguson*, when you stood on the top of the car, when it struck him? Did you see *Mr. Ferguson* at or about the time you set the brake, and if so, how far was he from the south end of the car, and did you holler to him to get off the track?" The first question was objected to as incompetent and immaterial; the others, as incompetent and not proper cross-examination. The objections were sustained, and error is assigned upon such rulings. Later in the trial it was proved by uncontradicted evidence that the brake was at the south end of the car; that Carroll stood on the top of the car and saw the plaintiff when the car struck him; and that the plaintiff was about fifteen feet from the car when Carroll called out to him. If the rejection of this testimony in the first instance was erroneous, the error was cured by its subsequent admission, and especially so, since the testimony on those subjects was entirely uncontradicted.

4. The next question is whether the defendant company is liable in this action. Both answers deny that the company had any possession or control of the railroad, or was in any manner concerned with its operation or management. If such is the fact, counsel for the company has probably demonstrated, on principle and authority, that the company is not liable; but we do not think the record shows that such is the fact. The road upon which the accident happened is known as the Wisconsin Central Railroad.

It is alleged in the complaint that the defendant company is the owner thereof, and this averment of ownership is not denied in either of the answers. Such ownership is therefore a verity in the case. When a railroad company owns a railroad in operation, bearing the name of the company, and which presumably the company constructed, the presumption is that such company operates it, and in order to relieve itself from liability for injuries to persons upon such road, caused by the negligence of the employees operating the same, the burden of proof is upon it to show that it does not operate the same. In this case there is no proof on that subject, and hence the presumption remains unshaken. We think the judgment properly went against the company, as well as against the defendant *Abbot*.

5. One of the grounds upon which the motions for a new trial were founded, is that the damages are excessive. The point was not argued in this court, although probably it is involved in the determination of this appeal. On the authority of *Berg v. C., M. & St. P. R. Co.* 50 Wis. 419, and the cases there cited, we cannot say that the damages awarded by the jury are excessive.

This disposes of all the errors assigned as grounds for reversing the judgment, adversely to the defendants.

*By the Court.*— The judgment of the circuit court is affirmed.

Note.— See *Ormsbee v. B. & P. R. Corp.* 14 R. I. 102, and note to *S. C.* 51 Am. Rep. 354, 360.— Rep.