# Pannell, Adm'x. *v.* Nashville, Florence & Sheffield Railroad Co.

*Action Against Railroad Company for Causing Death of Intestate at Public Crossing.*

1. *Contributory negligence.*—When it appears that plaintiff's intestate crossed the spur-track of defendant's road at the street crossing in a town where cars were left to be unloaded, leaving a space of twenty feet for the passage of the public, and on his return half an hour later, the cars having been pushed close together by an engine which could have been seen, was killed in attempting to pass between the cars, he was guilty of contributory negligence.

2. *Wanton or reckless conduct overcomes the defense of contributory negligence.*—If, in such case, intestate was not killed or mortally wounded by the first impact of the cars, and warnings of his perilous condition were given by those present to the yard-master in charge of the cars in time for him to signal the engineer, and in time for the latter to

[Pannell, Adm'x v. Nashville, Florence & Sheffield R. R. Co.]

reverse the motion of the cars, and prevent further injury, the defendant would be liable notwithstanding the contributory negligence of deceased.

APPEAL from Lauderdale Circuit Court.
Tried before Hon. H. C. SPEAKE.
Action by Mary A. Pannell, as administratrix of the estate of James Pannell, deceased, against the Nashville, Florence & Sheffield R. R. Co., for the alleged negligent killing of her intestate.

EMMETT O'NEAL, and A. S. COLYAR, for appellant, filed a lengthy argument and brief, citing numerous authorities, many of which are cited in the opinion.

SIMPSON & JONES, for appellee, insisted that the court properly gave the general charge for the defendant, citing 2 Rorer on R. R. 1074; Patterson's Rwy. Law, 48, 53; Beach on Contributory Neg. 14, 36, 60; 3 Wood's Rwy. Law, 1253; 2 Ib. 1320; R. R. v. King, 81 Ala. 178; Wheelright v. R. R., 16 Am. & Eng. Cas. 315; R. R. v. O'Shields, 90 Ala. 29; and many other cases.

STONE, C. J.—The Circuit Court, at the request of defendant, gave the general charge in its favor, and the result was a verdict against the plaintiff. The propriety of this charge is the only question argued before us, and we will consider no other.

There are, in a case like this, two catagories, in either of which the charge given would be free from error; and there are only two. First, when the testimony favorable to plaintiff, considered by itself and giving it full credence, fails to show a state of facts, from which it can be reasonably affirmed that the defendant corporation, through its agents, was guilty of the negligence charged, and that such negligence caused the injury complained of. In such case the plaintiff fails to make out his case and is not entitled to a verdict. The second category is this: When the testimony, taken in its entirety, shows that the defendant was guilty of negligence, which contributed proximately to the injury he suffered. And the burden of proving such contributory negligence is on the defendant.—Sav. & Mem. R. R. Co. v. Shearer, 58 Ala. 672; Wilson v. L. & N. R. R. Co., 85 Ala. 269; C. & W. Railway Co. v. Bradford, 86 Ala. 574; N. B. St. Railway Co. v. Calderwood, 89 Ala. 247.

The injury was inflicted in this case within the corporate

limits of a city or town. It was at the public street or road crossing, in a new and thriving section of the town. The testimony shows that the crossing as very much used, particularly of mornings and evenings; and various public enterprises were being carried on in the vicinity. Several tracks and spur-tracks of two railroads running parallel with each other, crossed the street or highway within a short distance, and the particular locality was mainly utilized by the railroads for two purposes; as a switching ground within which to construct trains, and as spur-tracks, on which loaded freight cars were placed and left to be unloaded. The injury in this case was done at a spur-track crossing. The track sprang out of the main track some distance north of the crossing, and extended south. It was used in common by two or more railroads, was frequently, if not generally, occupied by cars left there to be unloaded, and when cars were so placed and left, the custom was to detach and separate them into sections, so as to leave an open space or way of fifteen, twenty, or more feet at the highway crossing, that the public might have the unobstructed use thereof.

On the day preceding the one on which plaintiff's intestate lost his life, several cars were placed on this track, and divided into sections. South of the highway were cars loaded with lumber. Then came an open space of 15, 20 or more feet, leaving the highway crossing an open thoroughfare. Next came a section of three flat, or gondola cars, also loaded with lumber. Another interval of 15 feet, and then a single flat car loaded with stone. Above this last, and separated from it by a like interval, were seven cars, but whether loaded or not is not shown. These cars were all stationary, and were not in charge of, or attended by any railroad employe. They so continued until the disturbance after noticed.

On the morning of the disaster the owners of the lumber both north and south of the crossing commenced unloading it from the cars. There is no proof of notice given that any movement of the cars was contemplated; nor did the persons engaged learn otherwise, until they felt the shock, or witnessed its effect after noticed. Plaintiff's intestate, Pannell, resided some fifty yards east of the crossing, and before any change in the position of the cars was made, he passed on foot through the opening going west. He returned in about thirty minutes. When he returned, the opening along the highway had been very materially diminished; and in attempting to pass through, he got caught between the drawheads and was crushed to death. One phase of the testimo-

[Pannell, Adm'x v. Nashville, Florence & Sheffield R. R. Co.]

ny tends to show that by one movement of the cars he was caught, but not fatally injured, until the second concussion, which killed him instantly. This is denied by defendant. Their contention is that there was but one concussion, and they claim that the nature of the injury and other circumstances prove this.

The cause of the movement of the cars, and consequent disaster: A locomotive was sent northward on the main track of the railroad, and by means of a switch was shifted from the main to the spur-track, on which the lumber cars were being unloaded. It was north of all the cars, described above as being on the spur-track. The locomotive was attended by an engineer, fireman, the yard-master and one brakeman or switchman. There was no other attendant. The object was to remove, or change the position of some of the cars on the spur-track; but, as we have said, no notice was given of this intention to those unloading the cars. The spur-track had a down grade, coming south. The locomotive descended to the first or upper section of seven cars, and effected a coupling with them. There was testimony that up to this time the bell of the engine was being sounded. There was afterwards no signal given, until after intestate was killed. The train was then moved down, and a coupling effected with the flat car on which the stone was loaded. And then a further movement was made, and the cars north of the highway, from which lumber was being unloaded, were coupled to the train. This last coupling caused the death of plaintiff's intestate. It is probable the last two couplings were made by the yard-master himself.

When the different sections were brought together to be coupled, there was concussion and a movement of the cars down the track. There is difference in the testimony, and in conclusions attempted to be drawn from it, as to the number of times the lumber cars north of the road were moved by the concussions. The contention of plaintiff was that there were three movements, the first one forcing the cars partly across the road, but leaving a space of two and a half or three feet between the drawheads of the two cars approaching each other. That by the second concussion they were brought near enough to each other to catch and confine the intestate, but not in contact, or so near to each other as to cause his death. And that it was the third concussion which killed Pannell. There was testimony tending to prove the truth of this version. The defendant's contention—and there was testimony tending to prove it—was, that there were only two concussions which disturbed the cars next the

road; that the first one thrust the car nearly across the road, bringing the drawheads so close together, that intestate could at best only squeeze through; and that the second one, coming while he was attempting to pass through, being hindered by the narrowness of the opening, was the immediate cause of his death. These varying phases of the testimony call for the application of somewhat different legal principles.

We think it may be safely stated as common knowledge that it is exceedingly difficult to approach and couple to a stationary car, or section of cars, without disturbing to some extent the cars so coupled to; and if the approach be down grade, the danger of disturbance and the extent of it will be increased. When a car is thus approached and coupled to, if disturbed and moved by the concussion, the movement will be from the engine, and for all practical purposes will present a case similar to backing a train. Such movement, if across a public highway, or in a much frequented part of a city or town, and if there be no modifying circumstances in the case, would impose the duty of having some person so stationed as a watchman, that warning might be given of impending danger.—*Sav. & Mem. R. R. Co. v. Shearer*, 58 Ala. 672; *S. & N. R. R. Co. v. Sullivan*, 59 Ala. 272, and authorities cited in each of these cases; *S. & N. R. R. Co. v. Donovan*, 84 Ala. 141; *L. & N. R. R. Co. v. Webb*, 90 Ala. 185; *Cleveland, C. C. & I. R. R. Co. v. Wynant*, 35 Amer. & Eng. Rwy. Cases 328, 340, *et seq.*; *Barry v. N. Y. Cen. & H. R. R. R. Co.*, 13 Id. 615; *Roberts v. N. W. Rwy. Co.*, 35 Wisc. 679.

So long as the cars on either side of the highway were left stationary as if to be unloaded, and so long as an open space between the cars thus left was maintained at the crossing, such as was usually the case, this was an authority and invitation to the public to cross, and an implied guaranty that no risk would attend such crossing. If in these conditions the cars were suddenly moved without warning, whether that movement was intentional, or the result of concussion in coupling, and if in this way a person employed about the cars, or travelling the highway were injured, and if such injured person had not been guilty of proximate, contributory negligence, then the railroad would be liable. If in the case supposed there was a failure to look or listen, this would not be contributory negligence, by reason of the assurance of safety the attendant circumstances would furnish.—*Tabor v. Mo. V. R. R. Co.*, 46 Mo. 353; *Kennayde*

v. *Pac. R. R. Co.* 45 *Id.* 255 ; *Kelly v. M. & M. Rwy. Co.*, 29 Min. 1.

The case we have hypothesized, however, was not this case.   When plaintiff's intestate crossed the track going west, the opening at the crossing was 15 or 20 or more feet, and the cars on either side were stationary.   Everything about the crossing indicated perfect security in travelling the highway.   When he returned appearances had greatly changed.   The lumber cars he had left on the north side of the crossing had been moved so as to nearly block up the highway.   Only a small opening was left.   This should have been a warning to him that all was not well.   He should have looked and listened.—*M. & C. R. R. Co. v. Copeland*, 61 Ala. 376 ; *Leak v. Ga. Pac. Rwy. Co.*, 90 Ala. 161 ; *L. & N. R. R. Co. v. Webb*, 90 Ala. 185 ; *Ga. Pac. Rwy. Co. v. Lee*, 92 Ala. 262 ; *Artz v. Chic. R. I. & P. R. R. Co.*, 34 Iowa 153 ; *Lavarenz v. Same*, 56 *Id.* 689 ; *N. & C. R. R. Co. v. Smith*, 9 Lea, 470 ; s. c. 15 Amer. & Eng. Rwy. Cases, 469 ; *Grippen v. N. Y. Cen. R. R. Co.* 40 N. Y. 34 ; *Reading & C. R. R. Co.*, 102 Penn. St. 435.

The deceased was clearly guilty of contributory negligence in attempting, under the circumstances, to pass through the narrow opening.   Had he looked at any time after passing the main track of the L. F. & C. R. R. Co., save a narrow space hidden by the stack of shingles, he could not have failed to see the engine on the spur track, with steam up.—*S. & N. R. R. Co. v. Thompson*, 62 Ala. 494 ; *L. & N. R. R. Co. v. Crawford.* 89 Ala. 240.

There is, however, another aspect of this question.   Some witnesses testified that when Pannell was first caught between the drawheads, he was not fatally injured ; that this was before the last collision and coupling took place ; that the yard-master who was doing the coupling was only two car lengths from Hughes ; that he Hughes, and another hallooed to him repeatedly and loudly that he had "caught a man and to pull up," but that the yard-master paid no attention to it, and did not pull up.   The cars came together, the coupling was done, and Pannell was killed.

It is a well settled principle that when one person, whether natural or artificial is about to be the means or instrument of doing an injury to another, that other's negligence contributing proximately to it, does not, *per se*, exonerate the actor from all further effort; does not, *per se*, relieve him or it from all responsibility for the consequences. Supine inaction, or stolid indifference to consequences, the law does not tolerate.   The actor, no matter how free from

[Pannell, Admx. v. Nashville, Florence & Sheffield R. R. Co.]

fault, and no matter how negligent the one in peril may have been, must resort to every reasonable means, and employ every reasonable agency to avert the catastrophe. There are exceptions to this rule. The impossible need not be attempted, nor should preventive effort be resorted to, at the risk of greater injury than that to be averted. We are not required to love our neighbor better than we do ourselves. *Tanner v. L. & N. R. R. Co.*, 60 Ala. 621; *Cook v. Cen. R. R. & B. Co.*, 67 Ala. 533; *E. T., Va. & Ga. R. R. Co. v. Deaver*, 79 Ala. 216; *Frazer v. S. & N. R. R. Co.*, 81 Ala. 185; *Ga. Pac. Rwy. Co. v. Lee*, 92 Ala. 262; *Gothard v. Ala. Gr. So. R. R. Co.*, 67 Ala. 114; *M. & E. R. R. Co. v. Stewart*, 91 Ala. 421; *Ga. Pac. Rwy. Co. v. Hughes*, 87 Ala. 610, and authorities cited.

If when Pannell was first caught between the draw-heads he was simply confined and not mortally wounded, if the yard-master was notified of his peril, and heard and understood the halloo or warning, if this was heard by him in time to signal the engineer to reverse his engine, and in time to have it reversed, the down trend of the train arrested and the collision prevented, then his failure to so signal the engineer would render the railroad liable. It would take every one of these ingredients, however, to overcome intestate's contributory negligence; and if the jury are not affirmatively convinced of the truth of each and every one of them, their verdict should be for the defendant.

We will not discuss the other questions, but think there is nothing in them. The question we have been considering was one for the jury. The Circuit Court erred in giving the general charge.—*L. & N. R. R. Co. v. Allen*, 78 Ala. 494; 2 Wood Rwy. Law, 1257; *Faber v. St. P., M. & M. Rwy. Co.* 29 Min. 465; Beach Con. Neg. § 445 and note.

Reversed and remanded.