STOY, ADMINISTRATOR, *v.* THE LOUISVILLE, EVANS-
VILLE AND ST. LOUIS CONSOLIDATED
RAILROAD COMPANY ET AL.

[No. 19,993. Filed February 26, 1903.]

TRIAL.—*Verdict.—Answers to Interrogatories.*—A motion for judgment on the answers to the interrogatories notwithstanding the general verdict should be refused, unless the antagonism between the verdict and the answers is such, on the face of the record, as to be beyond the possibility of being removed by any evidence legitimately admissible under the issues. *p. 148.*

RAILROADS.—*Crossings.—Contributory Negligence.*—The rule requiring a traveler approaching a railroad crossing to look and listen can not be treated as an arbitrary standard of care, to be inflexibly applied by the courts in all cases, and the ruling of the court in rendering judgment for the defendant on answers to interrogatories, notwithstanding the general verdict, in an action against a railroad company for the death of plaintiff's decedent, on the ground that the interrogatories failed to show that decedent who was crossing a side-track on which detached freight-cars were standing, in order to board defendant's passenger-train, did not look in the direction of an engine standing on the side-track which moved the dead cars and killed decedent, was erroneous. *pp. 148–153.*

From Floyd Circuit Court; *W. C. Utz,* Judge.

Action by Lewis R. Stoy, administrator of the estate of Raymond P. Stoy, deceased, against the Louisville, Evansville & St. Louis Consolidated Railroad Company and its receiver. From a judgment for defendants on answers to interrogatories, notwithstanding the general verdict, plaintiff appeals. Transferred from Appellate Court, under §1337u Burns 1901.  *Reversed.*

*H. M. Dowling, E. B. Stotsenburg* and *J. H. Weathers,* for appellant.

*A. P. Humphrey, J. D. Welman, C. L. Jewett* and *H. E. Jewett,* for appellees.

Gillett, J.—Appellant instituted this action against said company and its receiver for the alleged wrongful killing of appellant's decedent, Raymond P. Stoy. The cause was put at issue, and a trial resulted in a verdict for appellant. In connection with the verdict, the jury answered forty-six interrogatories. Appellees moved for a judgment in their favor upon the answers to interrogatories. This motion the trial court sustained, over appellant's exception, and rendered judgment in favor of appellees. Whether this ruling was proper is the sole question that is presented for our consideration, and this question is still further narrowed by the admission of counsel for appellees that the ruling can only be upheld on the theory that the answers to the interrogatories disclose that said decedent Stoy was guilty of contributory negligence.

The answers to the interrogatories reveal the following facts: Just before his death, on the afternoon of March 1, 1898, said Stoy was proceeding south, at a brisk pace, along the east sidewalk of a public street in the village of Birdseye, for the purpose of taking an east bound passenger train that was then approaching said company's station in said village. Said station was situated immediately south of the

main track of said railway and immediately east of said street. It was necessary for Stoy to pass over a side-track, that was a few feet north of said main track, to reach said main track and said station. There were some detached freight-cars standing on said side-track just west of said street, and there were also some detached freight-cars standing on said side-track east of and near said street. A short distance beyond said last mentioned cars were some twenty freight-cars, with a locomotive attached to the east end thereof. The engineer of said freight-train backed the same up, upon the passenger-train approaching the station, presumably to get the locomotive and forward cars far enough into the siding so that the passenger-train could pass after it left the station. In closing up said freight-train, the detached cars to the east of the crossing were moved west at a rate of speed equal to three miles per hour, and, as Stoy was at that moment upon the crossing, he was knocked down by the rear car and killed. But a few moments before Stoy had been in the back part of a store that was on the east side of said street, and twenty-six feet north of the siding. On hearing the train, he passed hurriedly through the store, turned south when he reached the sidewalk, and proceeded towards the station. Stoy had been in the village frequently, and was familiar with the tracks at that point and with the vicinity generally. On the sidewalk, just south of the store, it was possible to see for 180 feet east along the siding; at a point half way to the crossing it was possible to look east along the siding 300 feet; and just north of the siding it was possible to see a train approaching on the siding from the east if it was within 400 feet. Our knowledge of what Stoy actually did in the matter of looking is limited to the answers to interrogatories forty and forty-four. These interrogatories and their respective answers are as follows: "(40) Did said Raymond P. Stoy turn his face sideways as he approached said

crossing, looking to the southwest—towards said passenger-train? A. Yes. "(44) Did said Raymond P. Stoy, from the time he left Wells' store until he got on the siding, look east on said side-track in the direction of the freight-train and dead cars? A. No."

So much of the complaint as is material to the question presented is as follows: "That on the day aforesaid the said Raymond P. Stoy, having had business in that part of the said town of Birdseye north of said tracks, shortly before the time for the departure of the passenger-train of the defendants over said railroad for the said city of New Albany, proceeded along the street and public way which led to said platform and station, for the purpose of being transported as a passenger by the defendant on its passenger-train from said town of Birdseye to the city of New Albany; that at the time the said Raymond P. Stoy approached the said side-track and switch to cross the same, as he was compelled to do to reach said platform and station, four freight-cars, detached from a train and engine, were standing on said side-track and switch a short distance eastward from the street and crossing on, over, and along which the said Raymond P. Stoy was then and there carefully walking to reach said platform and station, to be carried as a passenger by the defendants; that some thirty feet eastward from the east end of the standing car farthest from said crossing was a long freight-train of the defendant; that just as the said Raymond P. Stoy was passing over the said side-track and switch, the defendants, by their servants and agents in charge of said freight-train, negligently and wrongfully caused said freight-train to be suddenly and violently run backward against said detached cars so standing on said side-track and switch, without signal or warning of any kind, so that the said Raymond P. Stoy was, without fault on his part, and solely by reason of the carelessness and negligence of the defend-

ants, struck by said standing car so put in motion, knocked down, dragged, wounded, bruised, cut, run over, and killed."

The general verdict necessarily covers the whole issue, and solves every material question against the party against whom the verdict is rendered. The motion for judgment on the answers to interrogatories, notwithstanding the general verdict, should be refused, unless the antagonism between the verdict and the answers to interrogatories is such, on the face of the record, as to be beyond the possibility of being removed by any evidence legitimately admissible under the issues. *McCoy* v. *Kokomo R., etc., Co.,* 158 Ind. '662, and cases there cited.

The forty-fourth interrogatory is ambiguous, and the jury may have construed it as calling for an answer as to whether Stoy looked to the east on said side-track during the whole of the time in which he was passing from the store to the crossing; but in any event it does not preclude the idea that he looked as soon as he reached the southwest corner of said store. Especially does the answer to the said interrogatory fail to show that his face was not so inclined, even if he did not distinctively "look east," that the detached cars to the east of the crossing were wholly within his field of vision.

As shown, the complaint avers that said detached cars were standing "a short distance eastward from the street." The complaint warranted evidence that the car nearest the street was standing very near said street, and that the impact of the train suddenly caused it to move over said crossing. The question before us is not whether the jury should have acquitted Stoy of contributory fault in view of the evidence, but whether the answers to the interrogatories on their face show, in view of the issues, that such a conclusion ought not to have been reached.

We do not place much stress upon the ambiguity of the forty-fourth interrogatory, because the answers to other

interrogatories probably show that the decedent might have seen the approaching train. If the rule is to be applied that is announced in many of our crossing cases, that, if a traveler has an opportunity to see, it must be presumed that he either saw, or was heedless of the danger, then it would be immaterial whether the decedent looked or not. But the .question arises, is this a case where it can be declared, as a matter of law, that the decedent was bound to look as far east along the side-track as his vision permitted?

The look-and-listen rule can not be treated as an arbitrary standard of care to be inflexibly applied by the courts in all cases. Wood, Railroads (2d ed.), §323. As applied to ordinary grade crossings, the danger is so great that the courts declare the *quantum* of care required as a matter of law. This case, however, is not within the general rule. *McWilliams* v. *Detroit, etc., Co.,* 31 Mich. 274; *Robinson* v. *Western Pac. R. Co.,* 48 Cal. 409; *Pannell* v. *Nashville, etc., R. Co.,* 97 Ala. 298, 12 South. 236; *Cleveland, etc., R. Co.* v. *Penketh,* 27 Ind. App. 210; *French* v. *Taunton Branch Railroad,* 116 Mass. 537; *Bonnell* v. *Delaware, etc., R. Co.,* 39 N. J. L. 189; *Ferguson* v. *Wisconsin Cent. R. Co.,* 63 Wis. 145, 23 N. W. 123.

The McWilliams case was a suit for wrongfully killing one Gumbleton. As he was proceeding along a sidewalk on a public street and crossing a side-track or spur, a freight-car was suddenly moved backward, and he was crushed between the car and a fence along the side of the street. The trial court directed a verdict for the defendant. The cause was reversed, Campbell, J., for the court, saying: "We have found no evidence of negligence in Gumbleton. The testimony indicates that he was crossing while the cars were standing still, and that they were suddenly started by the locomotive pushing against them to back them up. A passenger along the sidewalk of a public street has a right to expect some warning before any sudden movement of this kind, and there should be very plain proof of negligence to

bind him under such circumstances. The track was not a part of the business track of the Central Railroad, and no regular trains ran there. Any use of this special track must have been subordinated to the rights of the general public. It does not stand on the same footing with an ordinary track. If there was any testimony from which a jury could infer negligence in Gumbleton, which we have not discovered, it was not such as to shut the case from the jury." A recovery was upheld in *Robinson* v. *Western Pac. R. Co.*, *supra*, under circumstances quite similar to the Michigan case, except that the train was on the main track. The case of *Cleveland, etc., R. Co.* v. *Penketh, supra*, was somewhat different in its facts from the case before us, but its reasoning is applicable here. In *Pannell* v. *Nashville, etc., R. Co., supra*, the Alabama supreme court declared that: "So long as the cars on either side of the highway were left stationary as if to be unloaded, and so long as an open space between the cars thus left was maintained at the crossing, such as was usually the case, this was an authority and invitation to the public to cross, and an implied guaranty that no risk would attend such crossing."

Our cases concerning injuries to travelers at ordinary railway crossings point out with no small degree of precision what care the traveler should exercise, but it is only necessary to note the reasons given in those cases to appreciate how inapplicable such reasons are to a case like the one at bar. The necessities of railroad traffic, the momentum of their trains, and the confinement of their movement to a track, entitles the company to a precedence in passing over a crossing; but the company should recognize that, apart from such necessary right of precedence, the traveler has as much right to use the crossing as it has, and this right upon the part of the traveler becomes much more than a mere theoretical right where it is proposed to start inert cars over a crossing. The right of precedence that the company is entitled to in the latter case can not arise until

it has given due notice of its purpose to occupy the crossing. To back suddenly over the crossing without signal or warning of any kind would be an act of the clearest negligence. Shearman & Redfield, Negligence (5th ed.), §471, and cases cited; Beach, Contrib. Neg. (2d ed.), §194.

To what extent is the above consideration a factor in determining whether the decedent was guilty of contributory fault? In Beach, Contrib. Neg. (2d ed.), §67, it is said: "When the defendant, by his own negligent or wrongful acts, or omissions, constituting a breach of legal duty, throws the plaintiff off his guard, or when the plaintiff acts in a given instance upon a reasonable supposition of safety induced by the defendant, when there is, in reality, danger, to which the plaintiff is exposing himself, in a way and to an extent which, but for the defendant's inducement, might be imputed to the plaintiff as negligence, sufficient to prevent a recovery, such conduct on the part of the plaintiff, so induced, will not constitute contributory negligence in law, and the defendant will not be heard to say that the plaintiff's conduct under such circumstances is negligent, for the purpose of a defense to the action. The defendant by his own negligent conduct, which has occasioned the conduct of the plaintiff, is estopped, in a certain sense, from making the defense that the plaintiff's conduct was negligent, or in other words, he is not to be allowed, first, to induce the plaintiff to be careless, and then to plead that carelessness as a defense to an action brought against him for the mischief that has been the result. The defendant must not take advantage of his own wrong in such a way as that." See, also, *Chicago, etc., R. Co.* v. *Boggs,* 101 Ind. 522, 51 Am. Rep. 761. We are not required to go on the contested ground as to how far a person (apart from any implied representation of safety) may rely upon the supposition that another will not injure him by an act of negligence, nor is it necessary to affirm that the decedent might confide himself to the safe keeping

of the company to the extent that a passenger might have done. It is enough to affirm in this case that there was so far an appearance of safety—whether there was an implied invitation to cross or not—that the situation as it appeared, to the extent that it seemed to denote safety, was proper to be considered as a component part of the whole transaction.

It is true that at an ordinary grade crossing the traveler must first vigilantly exercise his senses before placing any reliance upon the supposition that the company will perform its duty (*Malott* v. *Hawkins*, 159 Ind. 127, and cases cited), but this holding is based upon the fact that the danger of a train dashing over the crossing is too great to justify a reliance upon such supposition alone; but where inert and detached cars stand on either side of a crossing, we think that the traveler's conduct should be viewed in the light of the situation as it presented itself to him.

In this case the decedent was about to pass over a side-track, where the company had cut the crossing for the convenience of travelers upon the street; the cars on either side thereof were not only inert, but detached; it was in the vicinity of the station; a passenger-train was approaching on the main track, and, although decedent did not have the standing of a passenger, yet he was not far removed from such right. In these circumstances the answers to interrogatories do not enable us to say that the jury might not have been justified, under such evidence as might have been introduced under the issues, in returning a verdict for the appellant. It is thoroughly settled that where the court can perceive that reasonable men might honestly differ in their conclusions as to whether negligence or contributory negligence existed, the question can not be determined as a matter of law. *Rogers* v. *Leyden*, 127 Ind. 50, 57; *City of Franklin* v. *Harter*, 127 Ind. 446, 448; *Cleveland, etc., R. Co.* v. *Harrington*, 131 Ind. 426; *W. C. DePauw Co.* v. *Stubblefield*, 132 Ind. 182, 185; *Cincinnati, etc., R. Co.* v. *Grames*, 136 Ind. 39, 50; *Young* v. *Citizens St. R. Co.*,

148 Ind. 54; *DePauw Plate Glass Co.* v. *City of Alexandria,* 152 Ind. 443; *Chicago, etc., R. Co.* v. *Thomas,* 155 Ind. 634.

Judgment reversed, with directions to the trial court to overrule appellees' motion for judgment on the interrogatories, and to render judgment for appellant on the general verdict.

Dowling, J., took no part in the consideration of this case.