PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY v. McNEIL, BY NEXT FRIEND.

[No. 4,083. Filed January 12, 1904. Rehearing denied March 8, 1904. Transfer denied December 15, 1904.]

1. PLEADING.—*Complaint.—Negligence.—Railroads.*—Where the complaint shows that defendant was running a freight-train in the city of Indianapolis; that at a certain street the train was stopped and was divided so as to open the street; that while plaintiff was crossing the tracks along the line of the sidewalk a section of said train was "carelessly and negligently, suddenly and violently, pushed backward without the ringing of any bell," or notice or signal of any kind, and "without anyone at the rear of the train to give warning to travelers," whereby plaintiff was injured, etc.—an ordinance of such city forbidding the moving of any train backward without a "lookout" at the rear, and the ringing of the bell—such complaint is sufficient.   p. 311.

2. NEGLIGENCE.—*Railroads.—Backing Car Across Street in City.— Ordinance.*—Where defendant, without the ringing of its bell or stationing a "lookout" at the rear of its train, in violation of a city ordinance, backs its freight-train across the sidewalk, causing the injuries complained of, such defendant is guilty of actionable negligence, the purpose of such ordinance being for the protection of travelers, and the defendant's cutting of its train and opening the street being an invitation to travelers to pass.   p. 314.

3. SAME.—*Contributory Fault.*—Where the evidence shows that plaintiff undertook to cross the street between the sections of a freight-train which was cut to open the street, and, in passing, he went within three feet of the rear of one of such sections, and because of the backing of such section plaintiff was injured, the question of his contributory negligence was for the jury.   p. 317.

4. SAME.—*Presumption that Railroad Company Will Not Violate the Law nor City Ordinance.—Contributory Fault.*—A traveler has the

right to presume that a railroad company will not violate the law of the State, nor the ordinances of a city, and he may rely upon such presumption until there is evidence to the contrary, the question of his contributory fault, or want of due care, being for the jury. p. 317.

5.  TRIAL.—*Erroneous Admission of Evidence.*—*Curing.*—Where the court erroneously excludes certain evidence, its subsequent admission cures such error.  p. 319.

From Superior Court of Marion County (56,491); *James M. Leathers,* Judge.

Action by George R. McNeil, by his next friend, against the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company. From a judgment on a verdict for $4,500, the defendant appeals.  *Affirmed.*

*Samuel O. Pickens* and *Robert F. Davidson,* for appellant.

*L. P. Harlan, William N. Harding, Alfred R. Hovey* and *Charles S. Wiltsie,* for appellee. .

WILEY, P. J.—Action by appellee against appellant to recover damages for personal injuries claimed to have been inflicted by one of appellant's trains while running on the Belt Railroad in the corporate limits of the city of Indianapolis. The amended complaint was in a single paragraph, to which a demurrer was overruled. Overruling the demurrer to the complaint and the motion for a new trial are assigned as errors.

The negligence relied upon is backing a train within the corporate limits of the city of Indianapolis, in violation of a city ordinance, which is set out in the complaint. This ordinance requires the engine bell to be ringing when a train is running backwards within the city limits, and that a "lookout" be stationed at the rear end of such train to avoid accidents.

1.  The complaint avers that appellant was running one of its trains over and along the Belt Railroad; that at Fountain street said train stopped and was divided; that the

rear car of the front section stood across the sidewalk on the east side of said street, and obstructed said sidewalk; that appellee was traveling on said street going to his home, and in so doing had to cross the railroad track; that when he was crossing said track the front section of the train was "carelessly and negligently, suddenly and violently, pushed backwards without the ringing of any bell, and without any notice or signal or warning, and without anyone at the rear of the train to give warning to travelers, whereby he was knocked down," etc. It is argued by counsel for appellant that it is not a violation of the ordinance for those in charge of a freight-train, which is cut in two at a street crossing, to push a portion of the train backwards over the crossing without warning, in order to couple it with the section of the train on the opposite side of the crossing. In support of the position assumed by appellant's counsel we are cited to the case of the *Lake Shore, etc., R. Co.* v. *Pinchin* (1887), 112 Ind. 592. That case is so unlike the one at bar that it does not lend any aid to appellant. There the appellee undertook to pass between two cars of a through freight-train while they were coupled together—the train had been temporarily stopped, but was moving slowly when he attempted to pass between the cars. The complaint before us was sufficient to withstand a demurrer. *Louisville, etc., R. Co.* v. *Bates* (1896), 146 Ind. 564; *Rodgers* v. *Baltimore, etc., R. Co.* (1897), 150 Ind. 397.

A brief statement of the material facts exhibited by the evidence is important before taking up the questions presented by the motion for a new trial. Appellee was a little over seven years old. On the day he was injured he had been away from home playing with his cousins, and when injured was on his way home. To reach home he had to cross Fountain street, and when he reached said street appellant's train was standing on the track, cut in two. From Fountain street for nearly a mile to the east, or northeast, there is a steep grade which heavy trains are unable to

ascend.   It is customary for trainmen to divide their trains into two sections at the foot of the grade, and to take each section separately over the hill.   This had been done in this instance, and while the forward section was in motion appellee in some manner fell or was knocked under the train, whereby his left foot was crushed and the leg had to be amputated between the ankle and knee.   There is a sharp conflict in the evidence as to how the injury occurred. Appellee testified that he was returning home from a neighbor's house; that when he came to the railroad tracks there was a train standing on the crossing; that the train had been divided so there was room for wagons to pass between the two sections; that as he was passing across the track the forward section of the train "kind of gave a slack" and backed down upon him.   A boy thirteen years old, who lived near where the accident occurred, and who was wholly disinterested, testified that appellee was trying to jump on the side of the freight-car while the train was in motion, when he slipped, and was thrown under the wheels.   This witness was the only one, beside the appellee himself, who saw the accident.   He was standing in the door of his home, and testified that he saw appellee jump on the car twice before he was injured.   The statements of this witness, however, are somewhat weakened by proof of the fact that on other occasions he made statements which were contradictory of his sworn evidence.   The jury evidently accepted appellee's statement of the manner in which he was injured, and in face of the conflict in the evidence we are bound by it.

The appellee introduced an ordinance of the common council of Indianapolis, making it the duty of those in charge of a locomotive to ring the bell when the same shall be running in or through said city, and providing that it shall be unlawful for persons managing a train of cars to cause the same to be run backwards, in or through the city, without providing a watchman on the rear end of such train in order to avoid accidents.   There was no watchman on the

rear of the forward section of the train, and it is not clear from the evidence as to whether the bell attached to the locomotive was ringing. None of the employes saw the accident, and did not know of it for some time after it occurred.

Several questions are presented by the motion for a new trial, based upon alleged errors of the court in giving and refusing to give certain instructions, and in refusing to admit certain evidence offered by appellant.

Appellee's account of the manner in which he was injured is best told in his own words. He was asked the following question: "Just tell the jury, as you were crossing the tracks, what happened to you," to which he answered: "Why, the train kind of gave a slack, and backed back, and knocked me, so when I turned around one foot—my left foot—was on the track, and I kind of fell back, and the other foot was back of me, and I leaned back kind of, and it came back, struck it, and knocked me over." On cross-examination he was asked, and answered the following questions: "When you got there and started to walk around the end of the car after you got behind it, it moved? A. It gave a slack and backed back. It gave a slack and backed back? A. Yes, sir. What do you mean by slack? A. Well, it just moved back a little."

2. Appellant insists that, assuming appellee was injured in the manner stated by him, and by a movement of the cars as indicated by his own evidence, still it is not shown by the evidence that it was guilty of any actionable negligence. Under the averments of the complaint the negligence charged was in moving the train backwards within the corporate limits of the city of Indianapolis, without ringing the bell and without having a man on the rear car to give warning, in violation of the city ordinance. Either the omission to ring the bell or the failure to have a watchman on the rear of the train would be a violation of the ordinance, if in fact the train was moved backwards in the

city, within the meaning of the ordinance. Appellant's insistence is that the mere moving of the train back to give the slack so as to start it forward was not running a train of cars backwards in or through the city, within the meaning of the ordinance. If it was not, then no negligence was shown.

It is hardly necessary to remark that the purpose of the ordinance is for the better protection of life and limbs of travelers, and a guard for their safety in passing over railroad tracks. The object to be attained by the municipal authorities in the passage of such an ordinance can not be too highly commended. By cutting the train in two at the street crossing, leaving one section of it west of the street and the other section east, with a wide passageway between, was an invitation to the public to pass through. Under such facts, passengers upon the street had a right to assume that they could safely cross appellant's track. The evident purpose of appellant in cutting the train in two at that point was to make a safe way for travelers to pass to and fro. In the language of the appellee, the train gave a "slack and backed back." The evidence does not show how far it backed. It is clear, however, that it had to be backed from seven to eight feet at least to have inflicted appellee's injury. It having moved that distance, was it run "backwards" in the city, within the meaning of the ordinance?

This inquiry must be answered in harmony with the purpose of the ordinance and in relation to the place. We do not believe that it is within the power or province of the court to lay down any fixed rule, and we must decide the question in the light of the facts in this particular case. The front end of appellant's train was standing on a steep ascending grade, with its south end obstructing the north sidewalk of the street. Appellee was on that side of the street. The place was dangerous, and yet he, with other travelers, had a right to pass. A slight movement of the train might imperil the life and limbs of one who was rightfully cross-

ing, as evidenced by appellee's injury. If appellant had backed its train entirely across the street, which was sixty feet wide, so as to couple to the rear section, it could not be contended, with any degree of reason, that that would not have been running backwards in the city in violation of the ordinance. This being true, how can we say that the distance it was run back was not also violative of the ordinance, in the absence of some one on the rear car to give warning? The fact, as shown by the record, that no one connected with the train saw or knew of the accident at the time, is proper to consider in determining appellant's negligence, in that the train was moved backwards without any attempt being made by appellant to give necessary warning.

In the oral argument of this case counsel for appellant conceded that the language of appellee, in describing the movement of the train, might bear the construction, not only that the train gave a slack, but also that it moved back. The language of the boy is certainly susceptible of that construction, and, being so, it is fatal to appellant's position.

In *Lake Shore, etc., R. Co.* v. *Boyts* (1896), 16 Ind. App. 640, it was held that backing a train of cars across a street at the rate of eight miles per hour, without sounding the whistle or ringing the bell on the locomotive, and with no one on the car to give warning, was negligence. *Stoy* v. *Louisville, etc., R. Co.* (1902), 160 Ind. 144; *McWilliams* v. *Detroit, etc., Co.* (1875), 31 Mich. 274; *Robinson* v. *Western Pac. R. Co.* (1874), 48 Cal. 409.

If it is negligence to back a train of cars across a public street at eight miles an hour without any warning or watchman on the rear, it would be negligence thus to back it part of the way across. In the case before us it is not disclosed by the evidence the rate of speed, nor the exact distance the train moved, yet, under the facts showing that it moved backwards far and fast enough to inflict the injury complained of, the speed and distance can not be regarded as the essence of the act. We have examined the authorities

cited by appellant in support of its position that the evidence does not show any negligence on its part, but they do not give support to it, not being applicable to the facts before us. On this branch of the case our conclusion is that the evidence establishes appellant's negligence.

3. Appellant insists that appellee ought not to recover, because the evidence shows he was guilty of contributory negligence, in that he undertook to pass the rear end of the train in such close proximity. The evidence shows that he was within about three feet of it. The question of appellee's negligence was properly submitted to the jury, and under the authority of *Cleveland, etc., R. Co.* v. *Penketh* (1901), 27 Ind. App. 210, we must hold that appellee was not guilty of contributory negligence.

Appellant complains of instruction eight, given by the court on its own motion, and its refusal to give instructions numbered two, three and four, tendered by it. All these instructions relate to the question of appellant's negligence as applied to the facts disclosed by the evidence. The instruction given is in harmony with the views above expressed, and is a correct exposition of the law. Those refused are in direct conflict with what we have said on the question of appellant's negligence, and we must hold that they were properly refused.

4. The court gave the following instruction: "(10) In the absence of some warning or evidence to the contrary, plaintiff had the right to assume that defendant would obey said ordinance, and cause the bell attached to said locomotive to be rung to give warning of the movement of its train. Whether or not the bell was so rung, in compliance with said ordinance, is a question of fact for you to determine from all the facts and circumstances shown by the evidence. If you find from the evidence that the bell was not rung, then I instruct you that, in determining the question whether the plaintiff was or was not guilty of contributory negligence, you may, in connection with all other facts and

circumstances shown by the evidence, consider that plaintiff had a right to assume that if said train should be moved backwards some warning of such movement would be given him by the ringing of the bell, as required by said ordinance." Appellant insists that this instruction does not correctly state the law, and relies on the case of *Louisville, etc., R. Co.* v. *Stommel* (1890), 126 Ind. 35, as supporting that insistence. The instruction which appellant requested be given in that case is so radically different from the one under consideration that it can not be regarded as authority here. Under the authority of *Louisville, etc., R. Co.* v. *Williams* (1898), 20 Ind. App. 576, the instruction as given correctly stated the law.

The particular objection urged to the instruction is that it told the jury that appellee, in the absence of some warning or evidence to the contrary, had the right to assume that appellant would obey the city ordinance, etc. In *Cleveland, etc., R. Co.* v. *Harrington* (1891), 131 Ind. 426, it was said: "In the absence of some evidence to the contrary, we think the appellee had the right to presume that the appellant would obey the city ordinance, * * * and while the wrongful conduct of the appellant in this regard would not excuse her from the exercise of reasonable care, yet in determining whether she did use such care her conduct is to be judged in the light of such presumption." That case is in harmony with the instruction here given. See, also, *Indianapolis, etc., R. Co.* v. *McLin* (1882), 82 Ind. 435; *Pennsylvania Co.* v. *Stegemeier* (1888), 118 Ind. 305, 10 Am. St. 136.

In *Chicago, etc., R. Co.* v. *Boggs* (1884), 101 Ind. 522, 51 Am. St. 761, it was held that a traveler at a railroad crossing had a right to presume that the railroad company would obey the law. See, also, *Stoy* v. *Louisville, etc., R. Co.* (1902), 160 Ind. 144; *Malott* v. *Hawkins* (1902), 159 Ind. 127. True, the failure to ring the bell or to have a man on the rear car when the train backed did not relieve appellee

from the exercise of ordinary care. It was the province of the jury to determine the question of appellee's negligence in the light of all the facts pertinent thereto, and by its verdict determined it in his favor. Considering the instructions as a whole, as we must, they were as favorable to the appellant as the facts and law warranted, and, so considered, they substantially stated the law.

5. If there was any error in the refusal to allow certain evidence to go to the jury, it was subsequently cured by permitting appellant to introduce the very evidence that had been rejected.

Judgment affirmed.