## HARMON ET AL., RECEIVERS, *v.* SPEER, ADMINISTRATRIX.

[No. 24,699. Filed June 6, 1924. Rehearing denied October 9, 1924.]

1. TRIAL.—*General Verdict for Damages.—Allegations of Negligence Sustained.*—In an action for death of plaintiff's decedent, alleged to be due to negligence of defendants, a general verdict for damages amounted to a finding that the defendants were guilty of negligence in all the particulars as charged and that the decedent was free from contributory negligence. p. 204.

2. TRIAL.—*General Verdict.—Support by Intendments, Inferences and Presumptions Drawn from Evidence.—Interroga-*

*tories.*—A general verdict is supported by all intendments, inferences and presumptions that may be drawn from any evidence which was admissible under the issues but the answers to interrogatories are unsupported by any inferences or presumptions.    p. 205.

3.  RAILROADS.—*Contributory Negligence as Matter of Law.— Not Supported by Facts.*—Where action was brought to recover against a railroad company for the death of one who was killed by being run into by the backing of cars in a switchyard, the answers given to interrogatories did not establish contributory negligence as a matter of law.    p. 206.

4.  RAILROAD.—*Ordinance Requiring Watchmen on Backing Cars. —Construction.*—Where one provision of an ordinance requiring lights to be carried on the front end and rear end of a locomotive defined the words "front end," this was not to be taken as introducing any ambiguity into an earlier sentence of the ordinance which did not contain those words nor refer to them.    p. 207.

5.  RAILROADS.—*City Ordinance.—Backing of Cars.—Operation of Cars in Railroad Yard.*—A city ordinance providing for a signal or warning to be given in backing cars "in or through the city" applies to the operation of cars in a railroad yard. p. 208.

6.  RAILROADS.—*Contributory Negligence.—Burden of Proof.*— In an action for the death of a person killed by cars backing in a railroad yard, the burden of proof of contributory negligence as a defense was on the defendant.    p. 208.

7.  RAILROADS.—*Negligence as Matter of Law.*—Where there was a city ordinance prohibiting the backing of railroad cars without a watchman being at the rear end of the cars it was not negligence as a matter of law for one to attempt to cross a track near cars which had no watchman at the end of them. p. 208.

8.  RAILROADS.—*City Ordinance.—Right to Rely on Railroad's Obedience.*—Where a person who had no knowledge or warning to the contrary, relied upon the obedience of the employees of a railroad to a city ordinance this may properly be taken into consideration in determining contributory negligence. p. 208.

9.  RAILROADS.—*Regulation of Trains in Switch Yards.—Police Power of State.—City Ordinance.*—State police power extends to making and enforcing regulations for operating locomotives and cars in switch yards, and under §8655, cl. 49, Burns 1914, §53, cl. 49, Acts 1905 p. 219, the city had express authority to enact an ordinance to secure safety in the operation of trains through the city.    p. 208.

10. RAILROADS.—*Negligence.—Ringing of Bell.—Lack of Watchman.*—The mere fact that an automatic bell was set to ringing before a locomotive began backing, and rang continuously thereafter, did not necessarily negative the finding by the jury that the cars were negligently pushed back suddenly and violently "without any signal or warning" there being no watchman placed at the end of the cars as a city ordinance commanded.   p. 209.

11. RAILROADS.—*Evidence.—Right of Deceased to be in Switch Yard.*—Where an action was brought against the receivers of a railroad for the death of an insurance solicitor who was killed in the switch yard of the railroad and evidence showed that the solicitor had a letter from the division superintendent to the master mechanic and in turn a letter from him to all foremen stating that the solicitor was working under contract with the company and should be extended all courtesies in seeing the men was sufficient to support a finding that the deceased was rightfully in the switch yard under circumstances which imposed on the railroad a duty to exercise reasonable care for his safety.   p. 209.

12. RAILROADS.—*City Ordinance.—Backing of Cars.—Violation Shown.*—The backward movement of railroad cars in a switch yard a distance of fifteen feet or more without the required watchman, as a result of which an insurance solicitor was killed, was a violation of a city ordinance making it unlawful to run or cause to run backwards in or through the city any locomotive or cars, without required watchman.   p. 210.

13. RAILROADS.—*Trial.—Instructions Regarding Liability to Licensee.*—In an action for the death of an insurance solicitor by the backing of railroad cars in a switch yard, the insertion of the word "active" before the word "precautions" in a requested instruction that "so long as his presence was not discovered there was no obligation on the defendants to take any precautions to prevent injuring him," was not prejudicial to the defendant.   p. 211.

14. TRIAL.—*Instructions.—Liability of Railroad to Person on Premises by Permission.—No Reversible Error.*—An instruction that if a city ordinance requiring a watchman on all cars or locomotives backing in or through the city, was in force and the defendants violated it, such violation would be negligence which would render them liable if the deceased was lawfully on the premises of the defendant with written permission and was free from contributory negligence, was incorrect, but was not reversible error in view of instructions expressly contrary and in view of the answers given by the jury to certain interrogatories.   p. 211.

15. RAILROADS.—*Negligence of Servants.*—*Protection of Persons on Railroad Premises by "Permission."*—Something more than being lawfully on the premises of a railroad by "permission" is necessary to give a party the right to be protected from injury by the negligence of railroad's servants. p. 211.

16. APPEAL.—*Reversal of Judgment.*—*Errors not Affecting Substantial Rights.*—A judgment will not be reversed because of errors which do not prejudice the substantial rights of the complaining party. p. 212.

From Marion Superior Court (99,623); *Theophilus J. Moll,* Judge.

Action by Carrie E. Speer, administratrix, against Judson Harmon and others, receivers. From a judgment for the plaintiff, the defendants appeal. (Transferred to the Supreme Court under §1394 Burns 1914, §10, ch. 247, Acts 1901 p. 567.) *Affirmed.*

*Frank J. Goebel, Jacob S. White, J. W. Fesler, Harvey J. Elam* and *Howard S. Young,* for appellants.

*James M. Ogden* and *H. Nathan Swain,* for appellee.

EWBANK, J.—Appellee, as administratrix, recovered a judgment for $5,500 against all of the appellants for alleged personal injuries which caused the death of her husband, Jesse A. Speer. Overruling the motions of the appellant receivers for judgment on the answers to interrogatories and for a new trial, respectively, is assigned as error.

The issues were formed by an answer of general denial filed by the appellant receivers to the amended complaint, their codefendant, who was operating their locomotive at the time of the injury, not having filed an answer nor joined in the appeal. The complaint, as amended, alleged facts showing, in substance, that plaintiff (appellee) was and is the duly appointed administratrix of her deceased husband's estate; that on January 20, 1915, the defendant receivers (appellants) were operating the railroad of the Cincinnati, Hamilton

and Dayton Railway Company, as such receivers, in and through the city of Indianapolis, Indiana, including the "Moorefield yards" in which there were side tracks, switches, and the usual and necessary conveniences for operating said railroad; that on said day the codefendant of said receivers, William Taylor, was in their employ as a servant and agent of such receivers, running an engine in said Moorefield yards, and while plaintiff's decedent on said day was legally and properly in said yards, engaged in soliciting insurance therein by invitation of the defendants, who were interested in having their employees carry insurance, and while said yards were being operated and controlled by said defendant receivers, their said employee, Taylor, acting within the scope of his employment, carelessly and negligently started one of the cars in said yards in motion backward, suddenly and violently, without giving any signal or warning, and backed it against plaintiff's said decedent, and thereby instantly killed him, without any fault on his part. That in so doing the defendant receivers, through their said employee, Taylor, acting within the scope of his employment, negligently backed their engine and three cars against and over plaintiff's decedent in the city of Indianapolis, and thereby killed him, without providing a watchman or other person on the rear end of such cars to warn persons of their approach and to prevent accidents, in violation of an ordinance in force in said city which read as follows: "It shall be unlawful for any engineer, conductor, or any person, firm or corporation managing or controlling any locomotive, car or train of cars on any steam railroad to run or cause the same to be run backward in or through said city, without providing a watchman or other person on the rear end of such locomotive, car or train of cars to warn persons of its approach, and to prevent accidents; and when such locomotive, car or

train of cars is run or caused to be run within said city between the hours of sunset and sunrise, then the same shall be provided with signal lights, as follows: First, a white light on the front end of such locomotive, car or train of cars, second, a red light on the rear end of such locomotive, car or train of cars. The words 'front end', as used herein, shall mean that end of the locomotive, car or train of cars pointing in the direction in which the same is moving. Any one violating any of the provisions of this section shall, on conviction thereof, be fined in any sum not exceeding $100.00."

That said death was caused by the negligence of the defendant receivers and their said employee, without any fault on the part of plaintiff's decedent. That decedent left a widow and four minor children aged seven, nine, sixteen and eighteen years, respectively, who were dependent upon him, and who were thereby damaged $10,000.

The complaint, it will be observed, charged that in running the locomotive and cars against and upon the decedent defendants were negligent in three particulars: (1) that negligently they suddenly and violently started the locomotive and cars backward and ran them against and over him; (2) that in violation of the ordinance they negligently ran the cars against and over him without giving any warning or signal; and (3) that in violation thereof they negligently ran the cars and engine backward against and over him without any watchman or other person at the rear end to warn persons of their approach. The jury returned a general verdict for damages in favor of the plaintiff, which amounted to a finding that the defendants were guilty of negligence in all the particulars as charged and that decedent was free from contributory negligence. *Cleveland, etc., R. Co.* v. *Markle* (1918), 187 Ind. 553, 558, 119 N. E. 371.

With the general verdict the jury returned answers to a number of interrogatories, by which they found specially that plaintiff had come upon the prem-

2. ises of defendant "for the purpose of soliciting insurance as per contract"; that it was for the purpose of soliciting accident insurance for the Standard Accident Insurance Company, and at the time of his death he was soliciting insurance from the employees of defendants; that defendants had an interest, pecuniary or otherwise, in the success of decedent in writing accident insurance among their employees, which interest was "as per contract"; that at the time he was killed deceased was in the yards of the defendants and immediately before he was killed had placed himself between the rails and immediately west of a car, so that he could not see to the east sufficiently to see whether an engine was about to strike the cars or not, but that he was not standing at the west end of a freight car nor between the tracks, and that there is no evidence that he was standing on the track; that there was a box car immediately east of the car that struck the deceased, and a third car east of that one; that Taylor, defendants' employee, did not see the deceased on the track nor know that he was on the track where the car would bump into him, but at the time of the accident was attempting to couple on to the third box car with an engine, with the purpose on the part of Taylor to place the engine on the same track where the three cars were standing, for temporary storage; that in making such attempt the three cars immediately east of the deceased were moved about fifteen feet; that Taylor's only purpose was to move the cars a few feet to make room on the switch for the engine; that as the engine backed against the cars in question the bell was ringing, and as it struck them the engine was going about two miles an hour, and the coupling failed to

make.   The motion of appellants for judgment in their favor upon these answers to interrogatories was properly overruled.   The general verdict is supported by all intendments, inferences and presumptions that may be drawn from any evidence which would be admissible under the issues formed on the pleadings, while the answers to interrogatories are not supported by any inferences or presumptions at all.   *Cleveland, etc., R. Co. v. Markle, supra.*

The fact that the deceased had placed himself between the rails near the west end of the west car, where he could not see the approaching engine, but was 3. not standing there, are not inconsistent with evidence, admissible under the issues, that as the deceased approached the switch track from the north the locomotive passed the three cars going east on the track next south of them, with the bell ringing, and then reversed and backed in from that track, northwestwardly through the switch, and struck these cars and pushed them back just as the deceased was in the act of crossing; that the cars stood almost at the clearing post, and the engine never was on the track east of them, except as it was running in from the track adjoining on the south, and that the bell rang constantly; that bells on other engines in the yards were ringing and that escaping smoke and steam and the location of the engine southeast of the cars while on the track south of them, and while backing in through the switch made it impracticable for the deceased to see the approach of the engine, and that he relied on compliance by the defendants with the ordinance by sending a man to give notice before the cars were pushed backward.   And it might be that the engine, after it had run east on the adjoining track and reversed to back in through the switch, was made to strike gently against the cars while running at the rate of two miles an hour,

and then had its speed "suddenly and violently" increased, as it pushed the cars back. The engineman, Taylor, testified that he "might have shoved them back a hundred feet", and the undisputed evidence showed that they knocked a man down and the wheels ran over his body. The answers do not establish contributory negligence as matter of law.

There was nothing ambiguous about that part of the city ordinance applicable to the facts of this case. "It shall be unlawful for any engineer, conductor, or

4. any person, firm or corporation managing or controlling any locomotive, car or train of cars on any steam railroad to run or cause the same to be run backward in or through said city, without providing a watchman or other person on the rear end of such locomotive, car or train of cars to warn persons of its approach." This language simply means that when a locomotive is run backward or cars are pushed by it so that the tender or cars conceal from the persons operating the locomotive a clear view of the track on which such locomotive or cars are being run, they shall not be moved in a direction away from the locomotive without somebody stationed where he can see the track along which they are advancing, to warn persons thereon or about to go thereon. In this case the undisputed testimony of defendants' employee was that he backed the engine in upon a side track against some cars, and pushed them back, cutting a man's body in two, and did not know that anybody was there until told what had happened. The ordinance was made to guard against just such catastrophies, and was clearly violated. The fact that after making some special provisions in subsequent sentences of the ordinance as to the lights to be carried on the "front end" and "rear end" of a locomotive, car or train of cars at night, the ordinance contained language purporting to define the

words "front end" did not introduce any ambiguity into the first sentence thereof, as above quoted, which does not contain those words, nor refer to them.

That such an ordinance applies to the operation of cars in a railroad yard, for the protection of persons lawfully therein, has been heretofore decided, and we think decided correctly. *Baltimore, etc., R. Co.* v. *Peterson, Admr.* (1901), 156 Ind. 364, 370, 59 N. E. 1044; *Baltimore, etc., R. Co.* v. *Reynolds* (1904), 33 Ind. App. 219, 223, 71 N. E. 250; *Pittsburgh, etc., R. Co.* v. *McNeil* (1904), 34 Ind. App. 310, 69 N. E. 471.

Appellant had the burden of proof to make out the defense of contributory negligence, and in view of the fact that there was no watchman at the rear end of the cars when they were pushed backward it was not necessarily negligence, as matter of law, for the deceased to attempt to cross the track near them. The fact that a person who had no knowledge or warning to the contrary relied or had the right to rely upon obedience by the railroad employees to a city ordinance may properly be taken into consideration by the jury in determining whether or not he was guilty of contributory negligence. *Cleveland, etc., R. Co.* v. *Lynn* (1908), 171 Ind. 589, 594, 85 N. E. 999, 86 N. E. 1017.

The police power of the state extends to making and enforcing regulations for the operation of locomotives and cars within switch yards which will safeguard the lives of employees and others lawfully in such yards. And the city had express statutory power to enact ordinances "to secure the safety of citizens and other persons in the running of trains or cars in and through such city * * * and to provide protection against injury to persons or property from the operation of such railroads, trains or cars." §8655, cl. 49, Burns 1914, §53, cl. 49, Acts 1905 p. 219.

The mere fact that the bell rang continuously while the locomotive was passing east on an adjoining track and while it was backing through the switch to 10. get upon the track on which the three cars were standing, did not necessarily negative the finding by the jury that the cars were negligently pushed backward suddenly and violently "without any signal or warning." The evidence shows that the automatic bell ringer was started before the engine was moved in any direction, and that the bell continued to ring, without stopping, until after the accident. But the ordinance commanded that a watchman be placed at the end of the cars and a special warning given before they were moved backward, and the mere continuous ringing of the bell on the engine did not give such warning. The evidence clearly was sufficient to require the questions of defendant's alleged negligence and decedent's contributory negligence to be submitted to the jury for decision.

Witnesses testified that the deceased for some time before and on the day he was killed had been soliciting accident insurance among defendants' employees, 11. and went into the round house and yards and solicited insurance from all the men he found there; that he had applied to defendants' master mechanic, who had control of their round house and yards in the mechanical department, for permission to go through the department; that the master mechanic had sent him to the division superintendent two or three months before to obtain a permit, and he had returned with one signed by the division superintendent, stating that plaintiff's decedent was "working under regular contract with this company," which he presented to the master mechanic, and that the latter then wrote and gave to him a letter, as follows: "To all foremen: The

bearer, Mr. Speer, of the Standard Accident Insurance Company, is working under regular contract with this company. Please extend any courtesies possible in the way of seeing the men. Yours truly, A. Boas, Master Mechanic." And that said letter was substantially copied from the written permission given to deceased by defendants' division superintendent. This evidence with the inferences which reasonably may be drawn therefrom supports a finding that deceased was rightfully upon the premises of defendants under circumstances that imposed upon defendants a duty to exercise reasonable care for his safety. The language of the written permit, the circumstances under which it was given and the persons from whom it was obtained justify an inference that the words "this company" referred to the receivers operating the railroad company's property and controlling its employees.

Appellants asked the court to give an instruction stating that if defendants' employees at the time of the injury were simply engaged in placing an 12. engine on a switch track for temporary storage, and not in "transporting cars from one part of the yard to another," the movement of the cars in so doing was not the "running" of cars, and the ordinance did not apply. And they excepted to instructions which were given, to the effect that any pushing of the cars backward without anybody at the rear end to give warning and prevent accidents would violate the provisions of the ordinance. There was no error in refusing the instruction asked nor in giving the ones excepted to. The backward movement of fifteen feet or more, by which plaintiff's decedent was run over and killed was within the provision that it should be unlawful "to run or cause to be run backward in or through said city" any locomotive or cars, without the

required watchman. *Pittsburgh, etc., R. Co.* v. *McNeil, supra; Baltimore, etc., R. Co.* v. *Peterson, Admr., supra.*

Appellant asked an instruction to the effect that if the deceased was a mere licensee he would not be entitled to complain of defendants' failure to obey the city ordinance, but took the premises as he found them, with whatever perils then existed, "and so long as his presence was not discovered there was no obligation on the defendants to take any precautions to prevent injuring him." The court inserted the word "active" before "precautions," in the last line, and gave the requested instruction as thus altered. Other instructions that were given told the jury that if the deceased was there for his own pleasure or profit, and not for the mutual advantage of himself and the defendants, he was a mere licensee, and the defendants owed him no duty to take steps to secure his safety; and that if he had only been granted permission to go upon defendants' premises for the purpose of soliciting insurance, and if at the time of his death he was not so engaged, but was in a part of the premises where he had no purpose to solicit insurance, he was a trespasser to whom defendants owed no duty except to refrain from injuring him after his presence in a position of peril was discovered. Appellant clearly was not prejudiced by the insertion of the word complained of, and we need not consider and do not decide whether or not its insertion was technically an error.

Complaint is also made of an instruction to the effect that if the ordinance in question was in force, and the defendants violated it, such violation would be negligence which would render them liable in damages for killing a person by reason thereof, if he was "lawfully on the premises of the defendants with the written permission of those in authority," and

was free from contributory negligence. This was not correct. Something more than being lawfully on the premises by "permission" was necessary to give the deceased a right to be protected from injury by the negligence of defendants' servants. But the instruction speaks of "written permission," and the undisputed evidence was that the only "written permission" to go upon the premises which had been given to the deceased was given by the division superintendent and the master mechanic, respectively, in the language above set out, which recited that Mr. Speer was "working under regular contract with the company," and necessarily the jury would understand that this was what was meant by the word "written permission." And since instructions were given by which the jury were expressly told that if the deceased was at the place where he was killed as a mere licensee or as a trespasser, or was there otherwise than for the mutual advantage of the defendants and himself, the defendants owed him no duty to exercise care for his safety, and since they answered the interrogatories as they did, we cannot believe the verdict would have been different if this error had not been committed. Therefore, we hold that it is not sufficient cause for reversing the judgment. As applied to the evidence of this case we do not think any of the instructions complained of could have misled the jury to the prejudice of appellants.

16. A judgment will not be reversed because of errors that did not prejudice the substantial rights of the complaining party.

The judgment is affirmed.