## CITIZENS GAS AND FUEL COMPANY *v.* WARDEN.

[No. 11,868.   Filed November 18, 1925.   Rehearing denied April 23, 1926.   Transfer denied October 31, 1929.]

*Beasley, Douthitt, Crawford & Beasley* and *Maxwell & McFaddin,* for appellant.

*Howard L. Hancock* and *Miller & Kelley,* for appellee.

McMahan, J.—Complaint by appellee to recover damages on account of the freezing of certain fruits and vegetables by reason of the wrongful removal by appellant of a gas meter and the wrongful shutting off of the supply of gas in appellee's place of business. Appellant's motion to make the complaint more specific and its demurrer to the complaint being overruled, the issues were closed by a general denial. The cause was tried by the court without a jury, and resulted in a finding and judgment in favor of appellee for $322.79. This appeal follows the overruling of appellant's motion for a new trial.

The errors assigned relate to the action of the court in overruling the motion to make the complaint more specific, in overruling the demurrer, and in overruling the motion for a new trial. There is no merit in the contention that the court erred in overruling the motion to make the complaint more specific. In so far as the ruling on the demurrer is concerned, it is sufficient to say that the record discloses that a fair trial was had upon the merits, and that, without objection, evidence was introduced covering all the alleged defects in the complaint. In such

cases, the overruling of a demurrer to a complaint is not reversible error.

This case comes to us after a second trial, and we are asked to reverse the judgment on the grounds that the decision is not sustained by sufficient evidence, and is contrary to law. In support of this contention, appellant says the evidence shows there was an abandonment of the contract by appellee, that he acquiesced in the removal of the meter, that the evidence is not sufficient to show that the removal of the meter was the proximate cause of the alleged damages, and that there is no evidence showing the removal of the meter was wrongful.

The evidence shows that on January 30, 1917, and for a period of five years prior thereto, appellant was and had been furnishing gas to appellee for the purpose of heating the basement of his warehouse, wherein he kept and stored fruit and vegetables. The bills for gas were rendered and payable by the week. The meter in appellee's basement was read January 29, 1917, and a bill for $3.20, the amount due for the preceding week, was left at appellee's place of business. Appellant had an established rule authorizing the removal of a meter upon failure to pay gas bills when due. Appellee paid the gas bill for the week ending January 29, 1917 on the morning of January 30, 1917. The meter was removed from appellee's place of business about the middle of the afternoon of that day, and after the bill had been paid in full. It was removed by Wesley Williams, an employee of appellant, who, about a half hour before removing the meter, met appellee in the street, where the two held a short conversation. The evidence is conflicting as to what was said by the parties. Williams testified that he asked appellee if he had paid "last week's gas bill," and that appellee replied that he had not, and, in response to a question as to whether he

was going to pay it, he said "no," that he then informed appellee that his orders were, in case he did not get the money, to remove the meter, that appellee said, "use your own pleasure," and turned around and left the witness. Appellee testified that when Williams asked if he had paid his gas bill, he replied, "see your book-keeper"; that Williams did not say to him that he had orders to remove the meter if he did not pay the bill; and that he, appellee, did not tell Williams to use his own pleasure; that he told him to see his bookkeeper. Appellee further testified that he went to the bank, and, when he returned to his place of business, between four and five o'clock that afternoon, he found the doors to the basement open, the gas meter removed, the gas disconnected, and that the heat was all out of the basement, the temperature outside that evening being about 30 degrees. There were 103 bunches of bananas stored in the basement, which became chilled and were unfit for sale and had to be thrown away. A small quantity of sweet potatoes, lettuce and green onions was also damaged because of the cold.

Appellant concedes that appellee had paid his gas bill in full prior to the removal of the meter, but insists that appellee, by his conduct and conversation with the witness Williams, acquiesced in the removal of the meter, and that such acquiescence amounted to an abandonment of the contract. In arguing this contention, appellant ignores the testimony of appellee and relies entirely upon the testimony of Williams. This contention of appellant cannot be sustained in view of the testimony of appellee. Appellant also contends there is no evidence showing the existence of any contract requiring appellant to continue furnishing gas to appellee, and that there is no evidence to show that appellant was a public service corporation upon whom the law imposed the duty of continuing to fur-

nish appellee a supply of gas. While no witness in so many words testified that appellant was a public service corporation, and, as such, was under an obligation to furnish gas to appellee, the evidence is sufficient to sustain a finding in appellee's favor on this question. The evidence discloses, without dispute, that, for at least 18 years, appellant had been in the business of furnishing gas to various customers. One witness testified that he had been in the employ of appellant for that length of time and that, during that time, he had been engaged in setting meters, taking them out, and making collections. Another witness testified that he was and had been the secretary and treasurer of appellant company for more than 11 years; that appellee's attorney called him at about 11 o'clock the next day after the meter was removed and told the witness that the meter had been removed and that there had been some damage to appellee's stock, at which time the witness stated that, if the meter had been removed and the bill had been paid, they would be glad to put the meter back at once; that, shortly thereafter, he told appellee that appellant would be glad to put the meter back; that he did not issue the order to remove the meter; that Boaz was a meter reader and collector, and had collected this bill, but had not reported its payment; that appellee had $5 on deposit with appellant to guarantee the payment of final bills upon the removal of the meter; that there was not anything due appellant at the time the meter was removed; and that, if it had known the bill had been paid, the meter would not have been removed. Appellant had adopted rules concerning the removal of meters upon failure to pay bills when due, and there is evidence tending very strongly to show that, on another occasion, appellee had to resort to court to enjoin the removal of the meter and the cutting off of the gas in his place of business.

Without entering any further into the details of the evidence, it is, in our opinion, sufficient to justify the court in drawing the inference that appellant was a corporation engaged in the business of furnishing gas to the public as a public-service corporation, and that the shutting off of the gas was unlawful.

Appellant also contends the evidence was not sufficient to justify the court in finding that the shutting off of the gas was the proximate cause of the damage suffered by appellee. The bananas in question were stored in a basement where the necessary plumbing to heat it by gas had been installed, the fixtures for that purpose having been purchased from appellant. There was no flue in the building. The basement was divided into three rooms, one of which was used for the storage of bananas partially ripened, the others for storing green stuff. These rooms were lined with paper in order to retain the heat, and were connected by doors which were kept shut. The room in which some of the bananas were placed for ripening purposes was kept at a temperature of from 65 degrees to 70 degrees. Part of the bananas were kept in another room where the temperature was about 55 degrees. A drop in the temperature sufficient to chill these bananas would cause them to turn black and to render them unsalable. The evidence shows that appellant's employees, when they removed the meter, left the doors in the basement, including an outside door, open, and that, when appellee returned to his place of business, the temperature in the basement was so low that the bananas had become chilled. Appellant says appellee should have gotten oil stoves and put in the basement so as to have prevented the bananas becoming chilled. The evidence is sufficient to justify a finding that the bananas were chilled before appellee learned the meter had been removed. Without any further

discussion of the evidence, we hold it is sufficient to sustain the finding.

Judgment affirmed.

## ON PETITION FOR REHEARING.

McMAHAN, J.—Appellant, in support of its petition for a rehearing, insists we erred in holding it was not reversible error to overrule the demurrer to the complaint. In support of this contention, appellant cites *Friedersdorf* v. *Lacy* (1910), 173 Ind. 429, 90 N. E. 766; *Belt, etc., Co.* v. *Mann* (1886), 107 Ind. 89, 7 N. E. 893, and *Ryan* v. *Hurley* (1889), 119 Ind. 115, 21 N. E. 463, in each of which cases, the Supreme Court held an error of this kind cannot be cured by subsequent proceedings in the case. But, as was said by this court in *Vulcan Iron, etc., Co.* v. *Electro, etc., Min. Co.* (1912), 54 Ind. App. 28, 36, 99 N. E. 429, 100 N. E. 307: "We were not unaware of these decisions when the original opinion in this case was rendered, but the Supreme Court seems to have departed from the rule announced in the cases cited. That court in a recent decision holds that the omission of a material averment from the complaint may be cured or rendered harmless by the evidence. *Crawfordsville Trust Co.* v. *Ramsey* (1912), 178 Ind. 258, 98 N. E. 177. . . . We recognize the force and effect of these decisions, but where the decisions of the Supreme Court are not in harmony, we feel at liberty to follow that line which is most recent, and which, in our opinion, is most in accord with the spirit of our statutory enactments on the subject." And the court, after quoting from §§345, 398, 658 R. S. 1881, §§368, 426, 725 Burns 1926, said: "It is true that in passing upon the sufficiency of a pleading to withstand a demurrer, the court will look solely to the facts averred in such pleading, and that it must stand or fall by its own

averments, and that the evidence, findings, or other parts of the record can not be considered in determining whether the pleading is sufficient. . . . The statutes quoted, however, seem to contemplate that this court, before reversing a case on account of an erroneous ruling on demurrer, shall do something more than merely decide that such ruling was erroneous. After we have decided that question, we are required by the statute to consider and determine whether such ruling, in view of the whole record, has prejudiced the adverse party in his substantial rights. In deciding this question we may look to the evidence, the findings, the answers to interrogatories, and to any other part of the record which can throw any light upon the subject; and, if it affirmatively appears from the whole record that the erroneous ruling on demurrer did not prejudice the adverse party and that the case has been fairly tried and determined on its merits, it is our duty to affirm regardless of such error."

On petition to transfer, the appellant in that case insisted that the rule so announced by this court was in conflict with the decisions of the Supreme Court in the three cases cited by appellant in the instant case in support of its petition for a rehearing. The petition to transfer was denied. Without expressing an opinion as to whether the refusal to transfer makes that case a ruling precedent, we are of the opinion that, having met with the approval of the Supreme Court, it is entitled to respectful consideration, and we are satisfied that the rule there announced by this court is correct and should be applied in the instant case. To the same effect, see *Aetna Life Ins. Co.* v. *Fitzgerald* (1905), 165 Ind. 317, 75 N. E. 262, 1 L. R. A. (N. S.) 422, 112 Am. St. 232, 6 Ann. Cas. 551; *Noble* v. *Davison* (1911), 177 Ind. 19, 96 N. E. 325; *Crawfordsville Trust Co.* v. *Ramsey, supra; Volker* v. *State, ex rel.* (1912), 177

Ind. 159, 97 N. E. 422; *Domestic Block Coal Co.* v. *De Armey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99, *Pittsburgh, etc., R. Co.* v. *Home Ins. Co.* (1915), 183 Ind. 355, 108 N. E. 525, Ann. Cas. 1918A 828; *Harmon, Rec.,* v. *Speer, Admx.* (1924), 195 Ind. 199, 144 N. E. 241, 246; *A. D. Baker Co.* v. *Smedley* (1912), 55 Ind. App. 79, 100 N. E. 307; *Indiana Life, etc., Co.* v. *Patterson* (1914), 55 Ind. App. 291, 103 N. E. 817; *Euler* v. *Euler, Admx.* (1913), 55 Ind. App. 547, 102 N. E. 856; *Scheigert* v. *Boyer* (1919), 69 Ind. App. 674, 122 N. E. 670; *Federal Life Ins. Co.* v. *Barnett, Admx.* (1919), 71 Ind. App. 613, 125 N. E. 522; *Finch, Admr.,* v. *McClellan* (1921), 77 Ind. App. 533, 130 N. E. 13, 131 N. E. 236; *Webster* v. *Adams* (1923), 79 Ind. App. 261, 137 N. E. 883; *Pittsburgh, etc., R. Co.* v. *Rushton* (1925), *post* 227, 148 N. E. 337, 149 N. E. 652. Among the earlier cases where the court looked to the evidence, see *Springer* v. *Myers* (1868), 29 Ind. 464; *Hedges* v. *Sims* (1868), 29 Ind. 574; *State, ex rel.,* v. *Board, etc.* (1905), 165 Ind. 262, 74 N. E. 1091, 6 Ann. Cas. 468.

Appellant makes no claim that it was harmed in the least by the overruling of its demurrer to the complaint. Nor does it deny that, without objection, evidence was introduced covering all the alleged defects in the complaint. The evidence was introduced, the jury instructed, a verdict returned, and judgment rendered just as it would have been if the complaint had not been defective. We are not called upon to weigh the evidence to determine that a fair trial was had upon the merits. We can, however, look to the record to see if sufficient evidence was introduced to sustain a finding of all facts necessary to sustain the verdict. *McLean, Admr.,* v. *Equitable, etc., Soc.* (1884), 100 Ind. 127, 136, 50 Am. Rep. 779.

The importance of the statutory provisions forbidding a reversal because of intervening errors where there has

been a fair trial on the merits deserves a careful consideration, and calls for their steady application to every case which can reasonably be brought within their scope. It was never intended that a case in which it is necessary to use a legal microscope to discover an error should be reversed and sent back to the trial court for a new trial when the record shows the error was a harmless one. Such a course is opposed to common sense and every principle of natural justice. The plain intention of the law is, and the welfare of society demands, that litigation be reduced to the minimum; that the time and labor bestowed in the trial of a cause shall not be lost when no prejudicial error appears in the record; and that a successful litigant shall not be put to the labor and expense of again establishing his right, when there has been a fair trial upon the merits. In short, it was and is the intention of the law that our appellate tribunals shall not reverse for harmless errors. To reverse and send a cause back for a new trial is often a practical denial of justice. The most common illustrations of the hardships resulting from reversing a cause and sending it back for a new trial are actions for personal injuries or death. These cases are, when for personal injuries, generally prosecuted by employees, and, when for death, by their representatives, whose financial means are as a rule limited. Witnesses become scattered, and death may intervene with a resulting handicap to the plaintiff. Witnesses must frequently be brought from a distance, and the expense while waiting for the cause to be reached and during trial must be paid. While it is our duty to reverse when prejudicial error has been shown, it is also our duty, upon error being pointed out, to look to the record to ascertain whether there has been a fair trial of the cause on the merits, and, if we find the errors were harmless, our duty is plainly prescribed by the statute. Section 368

Burns 1926 (§345 R. S. 1881) is, in part, as follows: "But no objection taken by demurrer, and overruled, *shall be sufficient* to reverse the judgment, if it appears from the whole record that the merits of the cause have been fairly determined." While §426 Burns 1926 (§398 R. S. 1881) says: "The court *must*, in every stage of the action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment can be reversed or affected by reason of such error or defect." And again, the statutory mandate is that: "No judgment *shall* be stayed or *reversed*, . . . for any defect in form, variance or imperfection contained in the record, pleadings, process, entries, returns, or other proceedings therein, which, by law, might be amended by the court below, . . . nor *shall* any judgment be stayed or reversed, in whole or in part, where it shall appear to the court that the merits of the cause have been fairly tried and determined in the court below." (Our italics.) §725 Burns 1926, §658 R. S. 1881. Such is the law as declared by that department of government which created this court, and whose mandate we are bound to obey in proper cases.

Appellant originally contended that the evidence was not sufficient to sustain a finding that it was a public service corporation, and that it was under obligation to furnish appellee with a supply of gas. This contention seems to have been abandoned, as appellant, in its brief on rehearing, admits that it is a "public utility corporation" owing duties to the public and gives that as one of the reasons why it deems it to be its duty to call our attention to certain questions that have arisen on this appeal.

Petition for rehearing denied.