## LAWRENCE *v*. KING ET AL.

[No. 25,320.   Filed February 23, 1932.]

*James E. McDonald, Arthur T. Mayfield* and *Charles M. Clark,* for appellant.

*Arthur R. Robinson, Frank A. Symmes, Garth B. Melson, Donald F. LaFuze* and *John C. Vandivier,* for appellees.

TREANOR, J.—Appellant was arrested by appellee Johnson on two warrants, one a warrant issued by the Governor of this State based upon a demand by the Governor of Tennessee for the return of the appellant to Tennessee as a fugitive from justice, and the other a warrant issued out of the Marion Municipal Court, room No. 3, based upon an affidavit filed by one Harry K. Vogan, as authorized by §2062 Burns 1926, Acts 1905, ch. 169, p. 584. Upon application by appellant, Marion Superior Court, room 4, granted a writ of *habeas corpus* directed to appellee, who made return to same, claiming therein to hold appellant by virtue of the warrants aforesaid. Appellant's exceptions to the return were overruled; and the finding of the court upon the issues raised by appellant's answer, and the judgment thereon, were adverse to appellant. Appellant appealed and assigned as error, (1) the overruling of his exceptions to appellee's return to the writ of *habeas corpus,* and (2) the overruling of the motion for a new trial.

Neither the Constitution of the United States (Art. 4, §2), nor the act of Congress (R. S. §5278, U. S. Code Ann., Tit. 18, §662) passed pursuant thereto, gives the governor of an asylum state the power to initiate proceedings for the surrender of an alleged fugitive from justice from another state; but §2062, *supra,* provides that "any court, judge or justice of the peace authorized to issue warrants in criminal cases, may, upon complaint in writing," etc., issue a warrant for the arrest of a person found within this State who is charged with an offense committed in any

other state or territory, and liable to be delivered over upon the demand of the governor of such other state or territory. The purpose of §§2062-2066 Burns 1926, is to create a procedure by which an alleged fugitive may be apprehended and held for a reasonable time in order to give the executive of the state in which the offense is alleged to have been committed an opportunity to make a demand for the surrender of the person so held. And, when the demand is made, the Governor of Indiana may then issue his warrant for the arrest of the alleged fugitive; and when this warrant is served, the earlier warrant, if one has been issued by a judge or justice of the peace, is *functus officio*. So, in the instant case, the warrant which was issued out of the Marion Municipal Court, room 3, was superseded on the following day by the warrant issued by the Governor. Consequently, that portion of the return which relies upon the warrant issued by the municipal court is without legal effect, and we shall confine our consideration, in so far as the return is concerned, to the warrant of the Governor.

The appellant contends that appellee's return was bad for the reason that the portion of the Governor's warrant which is included in the return "failed to show any demand whatever of the Governor of Tennessee upon the Governor of Indiana for the return of the petitioner." We think the appellant's contention is sound. Section 2055 Burns 1926 is as follows:

"Upon the demand of the executive authority of any state or territory of the United States upon the governor of this state to surrender any fugitive from justice from such state or territory, pursuant to the constitution and laws of the United States, he shall issue his warrant, reciting the fact of such demand and the charge upon which it is based, with the time and place of the alleged commission of the offense, directed generally to any sheriff or constable of any county of this state, com-

manding him to apprehend such fugitive and bring him before the circuit, superior or criminal court or judge of this state nearest or most convenient of access to the place at which the arrest may be made; and such warrant may be executed by any sheriff or constable in this state, in his own county or in any other county in this state."

It is clear from the foregoing section that the warrant of the Governor must recite the fact of a demand and the charge upon which it is based, etc. When an alleged fugitive from justice has sued out a writ of *habeas corpus*, under §1196, Burns 1926, the one to whom the writ is addressed must, as a part of his return, state the authority, or cause, of the restraint of the party in his custody, and, if the authority be in writing, as in the instant case, he shall return a copy and produce the original on the hearing. In the instant case, the authority for the detention of the appellant was the warrant issued by the Governor, and the return contains what is apparently a copy of a part of the Governor's warrant; but this part does not recite the fact of a demand upon the Governor of Indiana by the Governor of Tennessee, nor does it recite the charge upon which the warrant is based, with the time and place of the alleged commission of the offense. The return is obviously inadequate, and the exceptions of the appellant should have been sustained. But the record shows that the complete original of the Governor's warrant was produced at the trial and was introduced as evidence without objection by appellant. If appellant's exceptions had been sustained, it is clear that appellee could have amended his return, as he should have been permitted to do, and thereby have corrected the defect in his return. If we should reverse this case on the ground that the trial court erred in overruling the exception to the return, our mandate would be that the exception be sus-

tained and that appellee be permitted to amend. We think the return should be treated as amended to conform to the evidence which was admitted without objection of appellant. In so doing, we are following the analogy of those cases in which both the Supreme and Appellate Courts have held that it is not reversible error to overrule a demurrer to a defective complaint when the defect consists of insufficiency of facts to constitute a cause of action, if, during the course of the trial, evidence is admitted, without objection by the demurrant, covering the omitted allegations. See *Crawfordsville Trust Co.* v. *Ramsey* (1912), 178 Ind. 258, 273, 98 N. E. 177; *Noble* v. *Davison* (1911), 177 Ind. 19, 96 N. E. 325; *Rowlett* v. *Cockrill* (1927), 86 Ind. App. 92, 156 N. E. 181; *Maryland, etc., Ins. Co.* v. *Harris* (1926), 86 Ind. App. 129, 154 N. E. 36; *Citizens Gas Co.* v. *Warden* (1926), 90 Ind. App. 182, 149 N. E. 565; *Pittsburgh, etc., R. Co.* v. *Rushton* (1925), 90 Ind. App. 227, 237, 148 N. E. 337, 149 N. E. 652.

The appellant specified as cause for a new trial that the decision of the court was not sustained by sufficient evidence and was contrary to law. In support of this cause, he relies upon §2061 Burns 1926, *Hartman* v. *Aveline* (1878), 63 Ind. 344, 30 Am. Rep. 217, and *O'Malley* v. *Quigg* (1909), 172 Ind. 350, 88 N. E. 611. Section 2061, *supra,* provides, in substance, that no citizen or resident of this state shall be surrendered as a fugitive from any other state or territory when it shall be disclosed "that such citizen or inhabitant was in this state at the time of the alleged commission of the offense, and not in the state or territory from which he is pretended to have fled," etc. It is clear that §2061 is in harmony with the general rule of law announced by both federal and state courts in interstate rendition cases.

"It is the general rule that to be a fugitive from justice a person must have been actually within the state from which a demand for his surrender comes at the time at which the said crime is alleged to have been committed." *Ex parte Forbes* (1920), 17 Ala. App. 405, 85 So. 590.

The foregoing rule was applied by the Supreme Court of the United States in *Hyatt* v. *People, ex rel.* (1903), 188 U. S. 691, 23 Sup. Ct. 456, 47 I. Ed. 657. In that case the alleged fugitive was charged with having committed the crime of larceny and false pretenses in the State of Tennessee on April 20 and 30, May 8, and June 17 and 24, 1901. It was conceded by both sides that he was not in the State of Tennessee, between May 1, 1899 and July 1, 1901, but it was also conceded that he was in the State of Tennessee on July 2, 1901, which was within eight days after the time when the last crime was alleged to have been committed. The indictment was returned on February 26, 1902, a date subsequent to the day that he was actually within the State of Tennessee, and within two years of the earliest date on which a crime was alleged to have been committed. The remarks of Justice Peckham, speaking for the Supreme Court, are strikingly applicable to the facts of the instant case.

"The indictments in this case named certain dates as the times when the crimes were committed, and where in a proceeding like this there is no proof or offer of proof to show that the crimes were in truth committed on some other day than those named in the indictments, and that the dates therein named were erroneously stated, it is sufficient for the party charged to show that he was not in the State at the times named in the indictments, and when those facts are proved so that there is no dispute in regard to them, and there is no claim of any error in the dates named in the indictments, the facts so proved are sufficient to show that the person

was not in the State when the crimes were, if ever, committed. . . .

"We are of opinion that as the relator showed without contradiction and upon conceded facts that he was not within the State of Tennessee at the times stated in the indictments found in the Tennessee court, nor at any time when the acts were, if ever committed, he was not a fugitive from justice within the meaning of the Federal statute upon that subject, and upon these facts the warrant of the governor of the State of New York was improperly issued, and the judgment of the Court of Appeals of the State of New York discharging the relator from imprisonment by reason of such warrant must be affirmed."

The affidavit in the instant case, filed in Tennessee, charged that appellant committed the crime of embezzlement in Hamilton County, Tennessee, "on or about July 26, 1926." The evidence establishes absolutely that appellant, a citizen and resident of Indiana, was in Indianapolis, Indiana, on July 26, 1926, and had not been in Tennessee since July 20, 1926; that he left Hamilton County, Tennessee, on July 19, and arrived at his home in Indianapolis about 9 o'clock in the evening of July 20, 1926. In the instant case, as in *Hyatt* v. *People, ex rel., supra,* no evidence was offered to show that the alleged crime was committed on some day other than that named in the affidavit and that the date therein was erroneously stated. We think that *Hyatt* v. *People, ex rel., supra,* clearly controls the instant case, unless the later case of *Strassheim* v. *Daily* (1911), 221 U. S. 280, 31 Sup. Ct. 558, 55 L. Ed. 735, has radically modified the rule of the *Hyatt Case.*

Under point 19 (appellee's brief p. 10), the appellee makes the following statement:

"In the case of *Hartman* v. *Aveline,* 63 Ind. 344, it appeared clearly in evidence that the petitioner had not

been in the demanding state for four or five years before the date of the alleged crime, but where it is admitted by the petitioner as it was in the case at bar, that he was in the demanding state for three months previous to and until six days before the date on which he is alleged to have committed the offense of embezzlement, he should not be discharged upon habeas corpus proceedings. *Strassheim* v. *Daily*, 221 U. S. 280. (1911)."

The foregoing statement calls for the suggestion that it is entirely immaterial whether the appellant had been out of Tennessee for a period of five years or merely for one day prior to "the date of the alleged crime," provided the appellant was in fact in the State of Indiana on "the date of the alleged crime." If the only evidence of the whereabouts of the appellant had been that he was in the demanding state three months previous to and until six days before the date on which he was alleged to have committed the offense of embezzlement, it is evident that the presumption of the presence of the fugitive in the demanding state, arising from the allegations in the affidavit charging him with a crime on or about July 26, 1926, would be conclusive. The foregoing assumption would present a case similar to *Hogan* v. *O'Neill* (1921), 255 U. S. 52, 41 Sup. Ct. 222, 65 L. Ed. 497, wherein the petitioner was charged with conspiracy to steal, the crime having been alleged to have been committed on August 18, 1916, in Massachusetts. The court said:

"It appeared that since the month of May, 1915, appellant had resided continuously at East Orange, New Jersey; but he admitted that in the summer of 1916—he said he could not remember the date—he visited Boston and spent some time in the company of Hanson, the alleged co-conspirator. . . . Appellant being charged by authentic indictment with a criminal offense com-

mitted in Massachusetts on or about August 18, 1916, and having, by his own admission, been personally present there and in communication with the alleged co-conspirator at or about that time, and being afterwards found in the State of New Jersey, there is adequate ground for his return as a fugitive from justice under §5278, Rev. Stats., enacted to give effect to Art. IV, §2, of the Constitution."

It is important to note that in *Hogan* v. *O'Neill, supra,* it does not affirmatively appear that the petitioner was not in the demanding state on the date charged; while, in the instant case, it is affirmatively shown, without any contradiction whatever, that the petitioner was in Indianapolis, Indiana, on the date named in the affidavit as the day on which the crime was committed in Tennessee, and had been in Indianapolis for at least five full days before the day on which the crime was alleged to have been committed. We do not think *Strassheim* v. *Daily, supra,* is controlling in this case. In *Strassheim* v. *Daily,* the alleged fugitive was charged with the crimes of bribery and false pretenses under the laws of Michigan. The bribery was laid under a *videlicet* as taking place on May 13, 1908; and the false pretenses were averred to have been made on May 1 of the same year. On both of these dates, the defendant was not in the State of Michigan; but the defendant was in Michigan a few days prior to the dates averred in the indictments, and, while there, committed overt acts which were essential steps in the scheme of bribery and false pretenses, which offenses were consummated on the dates named. After concluding that the defendant was a criminal under the laws of Michigan, the court held that he was a fugitive from justice, the reason of the court being indicated by the following excerpt:

"Of course we must admit that it does not follow that Daily is a fugitive from justice. *Hyatt* v. *Corkran,* 188

U. S. 691, 712. On the other hand, however, we think it plain that the criminal need not do within the State every act necessary to complete the crime. If he does there an overt act which is and is intended to be a material step toward accomplishing the crime, and then absents himself from the State and does the rest elsewhere, he becomes a fugitive from justice, when the crime is complete, if not before. *In re Cook,* 49 Fed. Rep. 833, 843, 844. *Ex parte Hoffstot,* 180 Fed. Rep. 240, 243. *In re William Sultan,* 115 No. Car. 57. For all that is necessary to convert a criminal under the laws of a state into a fugitive from justice is that he should have left the State after having incurred guilt there, *Roberts* v. *Reilly,* 116 U. S. 80, and his overt act becomes retrospectively guilty when the contemplated result ensues."

In the instant case, there are no allegations in the indictment, nor any evidence in the record, to show that the petitioner, prior to July 26, 1926, committed any overt act in Tennessee which was an integral part of and intended to be a step toward the consummation of the crime of embezzlement, which was alleged to have been committed on July 26, 1926. We agree with the statement in Scott, Interstate Rendition (§61, p. 84) that the foregoing utterances of the Supreme Court "on this subject is decidedly drawing the line on the fugitive from justice as close as the Constitution and laws of the United States will permit"; but we do not think the rule applied in the case can be applied properly to the facts of this case so as to make appellant a fugitive from justice.

Appellee urges that appellant should not be discharged since the affidavit filed in Tennessee alleges that the offense was committed "on or about July 26, 1926," and the evidence shows that appellant was in Tennessee on July 19, 1926, i. e., "on or about July 26, 1926." If ap-

pellant were on trial on the charge of embezzlement, it would be immaterial whether the proof should show the offense was committed on July 26, 1926, or July 19, 1926; and that is true because the date of the offense is not an element of the offense, and not because of any virtue of "on or about." But when the fact in issue is whether one is a fugitive from justice within the meaning of the federal Constitution, such fact cannot be established without proving the physical presence of the alleged fugitive in the demanding state on the date the offense was committed. The date, July 26, 1926, stated in the affidavit must be taken, *prima facie*, as the date of the offense, and must be given the effect of establishing, *prima facie*, the presence of the appellant in Tennessee on that date. But when appellant established conclusively that he was in Indianapolis, Indiana, on July 26, 1926, and had been in Indianapolis for six days prior to that date, he clearly overthrew the presumption that he was a fugitive from justice.

In *Appleyard* v. *Massachusetts* (1906), 203 U. S. 222, 27 Sup. Ct. 122, 51 L. Ed. 161, 7 Ann. Cas. 1073, the alleged fugitive was charged with the commission of a crime on May 18, 1904, at Buffalo, New York. In respect to the claim of the accused that he was not in New York on May 18, 1904, the opinion of the court contains the following:

"It is, we think, abundantly established by the evidence that he was personally present in that city on that day and that thereafter he left New York, although there was some evidence to the effect that on the particular day named he was not in the State. In his own affidavit, submitted and accepted as evidence, the accused specified several days when he was in Buffalo, prior to and subsequent to May 18, 1904, but, as stated by the Attorney-General of Massachusetts, in his report to the Governor of that Commonwealth, *there was in*

*that affidavit no statement directly denying that he was in New York at the time and place indicated in the indictment."* (Our italics.)

In distinguishing the facts in *Appleyard* v. *Massachusetts, supra,* from the facts in *Hyatt* v. *People, ex rel., supra,* the following statement was made:

"The present case is a wholly different one; for here the presumption arising from the recitals in the warrant of arrest in favor of its validity was not overthrown by the proof; on the contrary, it appeared, by a preponderance of evidence, that the accused was in the State of New York when the alleged crime was committed."

The decision of the court was not sustained by sufficient evidence and appellant should have been granted a new trial. But we do not think anything can be gained by reversing with directions to grant a new trial. The facts bring this case squarely within §2061 Burns 1926, which makes it mandatory on a trial court to discharge the accused and to forthwith report the facts to the Governor. If the arresting authorities had voluntarily brought the accused before the superior court for a hearing as intended by §§2055, 2056 Burns 1926, the facts, as disclosed in the *habeas corpus* proceeding, would have required the superior court to discharge the accused in obedience to §2061, *supra.* The *habeas corpus* proceeding served the purpose of the hearing provided for in §2056. The judgment of the Marion Superior Court, Room 4, is reversed, and the cause remanded with instructions to discharge the appellant and to report the facts to the Governor.